MONUMENTAL PRINTING COMPANY ET AL. *v.*
JOSEPH AUGUST EDELL.
[No. 46, October Term, 1932.]

552

*Decided January 10th, 1933.*

The cause was argued before Bond, C. J., Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*Rignal W. Baldwin, Jr.,* and *George W. Newton,* with whom were *Harold Tschudi* and *Semmes, Bowen & Semmes* on the brief, for the appellants.

*Harry K. Lott,* with whom were *Louis Silberstein, Frank. Klitzner,* and *Justinus Gould* on the brief, for the appellee.

Digges, J., delivered the opinion of the Court.

The facts in this case, as shown by the record, are: The State Industrial Accident Commission, on August 14th,

1930, passed an order disallowing compensation to the claimant.. The commencement of the action in the Baltimore City Court seems to have been by filing in that court notice of appeal given to the commission, and admission of service of such notice by one of the commissioners, in the following language: "To the honorable, the members of said Commission: Kindly enter an appeal on behalf of the claimant, August Edell, from the order of the Commission passed on the 14th day of August, 1930, and have all papers certified and all proceedings sent to the Baltimore City Court. Frank Klitzner, attorney for claimant." "Notice of appeal in the above entitled cause is hereby accepted on behalf of the State Industrial Accident Commission and service of copy of said appeal is hereby admitted this 13th day of September, 1930. Omar D. Crothers, Commissioner"; and by filing two proposed issues, together with an election that these issues be tried before a jury. On October 21st the employer and insurer filed a motion *ne recipiatur* as to the transcript of record, upon the ground that the action in the Baltimore City Court had not been begun within the time prescribed by section 56 of article 101 of the Maryland Code, Supp. 1929. This motion was overruled, and that action constitutes the first exception contained in the record.

The question thus presented may be succinctly stated: Under the provisions contained in section 56 of article 101 of the Maryland Code, has the court jurisdiction to review the finding or order of the Industrial Accident Commission in cases where nothing has been filed in the nature of an appeal in the court where the appeal is to be reviewed, within thirty days from the date of the order of the commission, even though it appear that notice of or request for an appeal to that court had been served personally upon one of the commissioners, and that service admitted? The trial court answered this question in the affirmative. The contention of the appellants is that a proper construction of section 56 of article 101 requires the person feeling aggrieved at the action of the commission to take two steps: (1) To commence the proceeding by filing some paper in the court in which it is

sought to have the commission's decision reviewed; and (2) that notice of such action be served personally upon a member of the commission within thirty days from the rendition of its order or finding. There can be no question or dispute that section 56, in unambiguous terms, provides that no such appeal shall be entertained unless notice of appeal shall have been served personally upon some member of the commission within thirty days following the rendition of the decision appealed from; and unless it be shown that such notice was served within the time prescribed, the court to which the appeal is taken is without jurisdiction to hear and determine the questions sought to be reviewed. *Holland Mfg. Co. v. Thomas*, 136 Md. 77, 110 A. 209.

The appellants argue that the notice required to be given to the commission is the second step in the proceedings on appeal, and therefore cannot be taken until after the first step. With the premise admitted that it is a second step, logically the conclusion must follow that if there is a time limit of thirty days within which to take the second step, the first step must, of necessity, be required to be taken within the same time limit. The appellee does not dispute the logic of the result, if the premise is admitted, but denies the soundness of such assumption. The question therefore is: Does the language of section 56 require one, feeling aggrieved by the action of the commission, to docket a suit, or file some paper equivalent thereto, in the trial court before giving the prescribed notice to the commission? Those portions of section 56 pertinent to this inquiry are: "Any * * * person feeling aggrieved by any decision of the Commission affecting his interests under this Article, may have the same reviewed by a proceeding in the nature of an appeal and initiated in the Circuit Court of the county or in the Common Law Courts of Baltimore City having jurisdiction over the place where the accident occurred or over the person appealing from such decision. * * * No such appeal shall be entertained unless notice of appeal shall have been served personally upon some member of the Commission within thirty days following the rendition of the decision appealed

from. An appeal shall not be a stay. * * * In all Court proceedings under or pursuant to this Article, the decision of the Commission shall be *prima facie* correct and the burden of proof shall be upon the party attacking the same." In construing these provisions, the purpose of the whole act must be borne in mind, and such construction be given as will effectuate the intent and spirit of the act, unless that construction is plainly denied by the language used. This is indicated by positive provisions of the statute, where in section 10 it is provided that the commission shall not be bound by the usual common law or statutory rules of evidence, or by any technical or formal rules of procedure other than those provided in the act; and section 63 provides that the rule which requires statutes in derogation of the common law to be strictly construed shall have no application, but that the act shall be so interpreted and construed as to effectuate its general purpose. *Clough & Molloy v. Shilling,* 149 Md. 189, at page 193, 131 A. 343; *Core Contracting Co. v. Schaeffer,* 151 Md. 494, at page 502, 135 A. 318. Courts will adapt themselves to the increased latitude allowed the commission as to procedure. *Standard Oil Co. v. Mealey,* 147 Md. 252, 127 A. 850.

Section 1 of article 5 of the Code provides: "An appeal may be taken from a court of law or equity by application to the clerk; from the orphans' court by application to the register; from the commissioner of the land office by application to the commissioner; from the county commissioners by application to their clerk, and from a justice of the peace by application to the justice; or by filing a petition with the clerk of the court to which the appeal is made; and upon such application, if made within the time prescribed by law for taking such appeal, the clerk, register, commissioner or justice to whom the same is made shall enter a prayer of appeal upon his docket or minutes of proceedings, and transmit the papers or a transcript of the record, as hereinafter required." This section covers appeals from courts of law and equity, and other courts or bodies, specifically designated therein, empowered to originally determine the ques-

tions involved. It provides two methods of taking an appeal, one by application to the court or body from which the appeal is taken, and the other by filing a petition with the clerk of the court to which the appeal is taken. The provisions of this section have no application to appeals from the State Industrial Accident Commission, and are cited only for the purpose of showing the two methods of appeal applicable to a very large proportion of all appeals, only excluding those that are governed by special provisions. Of these two methods, that one which is most commonly, and we might say almost universally, employed, is by making application to the tribunal from which the appeal is taken and a review of whose decision is desired. Whereupon it becomes the duty of the original trial body to make a minute or memorandum of the appeal, and transmit a transcript of the record to the appellate body. This is required to be done, and is done, by the State Industrial Accident Commission in cases of appeal from its findings. If the construction of section 56 of article 101 contended for by the appellants be sustained, it will limit appeals in workmen's compensation cases to the one method least frequently employed (although permitted) in the great majority of cases, namely, by a petition to or docketing a suit in the court to which the appeal is taken; and this even though it is unequivocally required by the provisions of that section that in order to get any benefit from the appeal the appellant must serve personally upon a member of the commission notice of appeal within thirty days from the rendition of the decision appealed from. Upon the prescribed notice to the commission, the procedure followed and necessary to bring the case to trial in the appellate court is precisely the same in cases where there has not been previously docketed a suit in that court as in those cases where that has been done.

But, say the appellants, unless the thirty days' limitation for notice to the commission is also a limitation as to time for docketing the suit in the appellate court, there is no limitation as to the time within which the suit must be therein docketed. Since the taking effect of chapter 406 of

the Acts of 1931, cases on appeal from the State Industrial Accident Commission must be heard and determined on the record made before the commission, and no additional evidence is permitted to be received in the court. *Thomas v. Pennsylvania R. Co.*, 162 Md. 509, 160 A. 793, decided May 11th, 1932. Therefore the question of how soon the case on appeal is heard depends solely upon the time at which the transcript of record made before the commission is received in the court. The duty of the commission is to transmit the record promptly, or as soon as can be; and the fact that the appeal may or may not have been docketed in the court in no way affects the celerity with which the commission acts in transmitting the record. The party aggrieved is that one against whom the commission has decided; he is the appellant, and it is to his interest to prosecute the appeal as speedily as possible. This is true whether the appellant be the employee or the employer-insurer. In cases where the employee is the appellant the commission has determined adversely to his claim, and his every interest would urge a prompt hearing on appeal. On the other hand, if the appellant be the employer-insurer, it would be equally in his interest to have a speedy trial in the court, because his appeal does not, under the specific provisions of article 101, stay the award of the commission, but payments must be made in accordance with that award during the pendency of the appeal and until the commission's findings are reversed. If it be contended, as has been suggested, that delay might result in the death or disappearance of material witnesses for either party, the answer is that such consideration is of no consequence, because since the act of 1931 the record before the commission contains all of the evidence permitted at the trial on appeal.

Again, it is urged by the appellants that the language of the statute, "any * * * person feeling aggrieved by any decision of the Commission affecting his interests under this Article, may have the same reviewed by a proceeding in the nature of an appeal and initiated in the Circuit Court," etc., can only mean that the first step must be by taking

some action in the appellate court, because "initiate" means "to begin," "to commence," "to introduce by first act," "to set afoot," "to originate"; and any other action must be a subsequent step and, to be effective under the statute, must be taken after and not before the initiation of the appeal in court. Yet it is admitted that the prevailing practice in Baltimore City is to serve notice on the commission first, and file its admission of service in court at the time of docketing the suit, both steps being taken within thirty days. But it is said that although this practice shows that what is claimed to be the second step was taken before the first one, it would be highly technical to hold that the court was without jurisdiction under such practice. With this contention we agree, Even though the question presented is one of jurisdiction, in our opinion it would also be a technical construction, and subversive of the intent and purpose of the Legislature as disclosed by the entire Workmen's Compensation Law (Code, art. 101, sec. 1 *et seq.,* as amended), to hold that the appellate court's jurisdiction depended upon the filing of some paper or the docketing of a suit in the appellate tribunal within thirty days from the rendition of the decision of the commission. As has been shown, that act could not possibly have any effect upon the promptness with which the controversy would or could be determined.

This is a jurisdictional question, and the jurisdiction of the appellate court depends upon the construction of language employed in the statute, the meaning of which is doubtful and ambiguous. The practice throughout the state, under its provisions, has not been uniform. There have been a great many departures from the construction urged by the appellants, some of which they contend are slight and should be disregarded as technical; others they think are of greater moment, as illustrated by the case now under consideration, and should be so construed as to deprive the court of jurisdiction. Logically, their contention would deny the court's jurisdiction in one case as certainly as in the other; and in our opinion there is no justification for making such a distinction, especially in view of the fact that there could

be no difference in respect to the rights and interests of the parties litigant by giving jurisdictional effect in one case and denying it in the other.

In the recent case of *Stoll v. Baltimore,* 163 Md. 282, 162 A. 267, 272, it was said: "Again, the rules of construction require us to consider the result which may follow from one construction or another of a statute, as a potent factor in determining the legislative intent." The practice in the state not having been uniform, there are cases where the procedure on appeal was identical with that now under consideration, and where compensation has been denied or is being paid as a result of the decision in the appellate tribunal; and the effect of the construction contended for would be to nullify the decision in all such cases. While this is not controlling and is not to be considered when an adverse construction is required by clear, unequivocal, language, yet when construction is sought of ambiguous language, the court can and properly should consider the results of possible constructions.

It may be added that jurisdictional requisites are not ordinarily inserted in statutes by legislative bodies without intending that they serve a useful purpose. There may be exceptions to that general rule, where the provision found in the statute necessary to give a court jurisdiction is purely arbitrary; but such cases are the exception and are rarely to be found. If a future legislature were to amend this section by using such language as would unequivocally and without doubt create the situation contended for by the appellants, it would accomplish nothing more toward hastening or facilitating an early determination of the case on appeal than is required by the existing statute, when given the construction which we put upon it; and we can perceive no other purpose which the legislature could have in mind in inserting such a provision. Our conclusion is that the filing of papers or docketing of a suit in the court to which the appeal is taken, within thirty days from the decision of the commission, is not required by the provisions of section 56 of article 101 of Code, Supp. 1929; that the court had jurisdiction in this case, and the motion *ne recipiatur* as to the

transcript of the record from the commission was properly overruled by the trial court. We have discussed this question at greater length than would ordinarily be required: First, because of its importance; and, second, because there have been argued at the present term three other cases in which this question is involved.

The second point for decision is presented by these facts, as disclosed by the record: The original hearing before the commission was had, and its decision rendered, before June 1st, 1931, the effective date of chapter 406 of the Acts of 1931. After the appeal and the transcript of testimony had been forwarded to the court by the commission and received by the court, application was made to the lower court by the claimant, the appellant in that court, for an order remanding the case for the purpose of taking further testimony before the commission. Upon this petition the trial court by its order, dated June 3rd, 1931, remanded the case to the commission for the taking of additional testimony. Under this order of remand, additional testimony was taken before the commission, consisting of medical and expert evidence on behalf of the claimant; after which the transcript was returned to the trial court, including this additional testimony. At the trial of the case objection was made to the introduction of the additional testimony, which objection was overruled, and that testimony was read to the jury. The question is: In cases where the decision of the commission was rendered before June 1st, 1931, and trial on appeal from that decision had after that date, is a party to such appeal entitled to have additional evidence, to be used in the trial of the case, obtained by a remand of the transcript to the commission, and to use such additional testimony or evidence in the trial of the case on appeal? The record before us contains a rule of the Supreme Bench of Baltimore City, adopted after the passage of chapter 406 of the Acts of 1931, and before the date of its taking effect. The effect of the changes made by the repeal and re-enactment with amendments of section 56 of article 101 by chapter 406 of the Acts of 1931, as heretofore decided by this court, was to confine the trial of cases

on appeal from the State Industrial Accident Commission to the evidence produced before the commission, upon which its decision was based, and which is contained in the record made before the commission and transmitted by it to the trial court. *Thomas v. Pennsylvania R. Co., supra; Celanese Corp. v. Lease,* 162 Md. 587, 160 A. 801, 804.

In the last-mentioned case the court, speaking through Judge Offutt, said: "For reasons which need not be repeated here, it was held in *Thomas v. Pennsylvania R. Co.," supra,* "that the effect of that statute is to limit the courts and also the jury in every case in which an appeal from a decision of the commission is taken to a consideration of the evidence, and only the evidence, taken before it." In *Thomas v. Pennsylvania R. Co., supra,* it was held that chapter 406 of the Acts of 1931 was retroactive and applied to cases wherein the decision of the commission had been made prior to the effective date of that act, as well as those rendered since. In that case, as well as in *Celanese Corp v. Lease, supra,* the decision of the commission was prior to June 1st, 1931, and the trials on appeal were subsequent thereto. The additional testimony in those cases was attempted to be introduced in the trial court by witnesses produced at the trial. The theory of the parties offering such testimony in those cases was that chapter 406 had no retroactive force, and where the decision of the commission was rendered before its effective date, the parties on appeal were entitled to the benefit of the same procedure which existed prior to the effective date of the act. This court rejected such contention, holding that if the trial on appeal was held after June 1st, 1931, the evidence in the trial court was limited to that taken before the commission, even though the decision of the commission was before June 1st, 1931. The law established by those decisions, as above stated, is not disputed; but the claim is made that their effect is limited to additional evidence taken in the trial court, and has no application to additional evidence taken before the commission. It is clear that such a position is untenable, because the effect of chapter 406, as established by decisions of this court, would be cir-

cumvented and its declared purpose nullified by the practice sought to be here maintained. It is now settled that the case of the parties must be fully presented at the hearing before the commission, and on appeal they can rely upon nothing except such as was presented before the commission and which the commission was entitled to consider as the basis of its decision. The rule of the Supreme Bench referred to was clearly adopted upon the theory that chapter 406 had no retroactive effect, and that the apparent hardship in cases where the decision of the commission was prior to the effective date of the act could be remedied by that rule. This rule, being contrary to the statute as interpreted by this court, becomes void and of no effect.

The question of whether or not, after an appeal from the commission has reached the trial court, the transcript of record from the commission can be ordered returned for additional testimony and a new decision made by the commission, taking into consideration the additional testimony, is not presented by this record, because it appears that the commission took no action other than to permit the taking of the additional testimony in its presence. It did not consider the effect of this testimony upon the ultimate question involved, by attempting to affirm, reverse, or modify its previous decision. However, this being an important question in future procedure, we deem it expedient and not out of place to express our views on this point. From a consideration of the entire Workmen's Compensation Law and its declared and obvious purposes, it is abundantly shown that prompt settlement of claims of injured parties or their dependents was of prime importance in the legislative mind. If the practice suggested be sanctioned, it would inevitably result in interminable delays and protracted litigation. It would only be necessary for a party to the appeal to have the case remanded for the taking of additional testimony before the commission and a new decision by the commission from which a new appeal could be taken; and this procedure could be repeated without limit. In our opinion, after giving the parties in interest ample opportunity to fully present their

respective contentions before the commission, the hearing closed, a decision rendered, and an appeal taken seeking to review the correctness of the commission's decision, the case must be heard and decided in the court to which the appeal is taken upon the record made before the commission, and no additional evidence may be considered, no matter whether it be sought to be introduced in the trial court or before the commission, and without regard to whether or not the commission, after hearing such additional testimony, takes no action or renders a new decision.

It follows that the ruling of the lower court in admitting the additional testimony taken before the commission was error; and since, from the nature of this testimony, its admission may well have affected the jury in their consideration of the single issue submitted to them, it is reversible error.

The remaining exception is to the ruling of the court in refusing prayers for a directed verdict for the appellants. This ruling was made while the testimony which we hold should not have been admitted was in the case. The question now presented on these prayers is not whether the ruling was correct at the time it was made by the lower court, but whether, when the excluded testimony is not considered, there remains such evidence as requires the submission of the case to the jury. We think there is. Under such circumstances the evidence on behalf of the plaintiff must be considered as true, together with the inferences reasonably deduced therefrom. The appellee was employed by the Monumental Printing Company as a pressman in charge of the night shift, and had been in such employ for some time; and had been engaged in that class of work for about nineteen years. On June 13th, 1930, while together with two other men he was engaged in putting a form weighing from 300 to 350 pounds in position to go on the press, it did not move onto the press properly but went on "catacornered," which resulted in a shifting of the weight upon the claimant, it at that time resting upon his arms and stomach, and which required extra exertion on his part to place it in proper position. The testimony is that in exerting extra

strength for that purpose he "strained" or "sprained" his back; that he almost immediately told one of his fellow employees of the injury. This injury occurred Friday night, and he returned home some time after 12 o'clock of that night. On Saturday morning he complained to his wife and asked her to administer to his injury by "rubbing." He did not go to work on Saturday. On Sunday and Monday his pain increased. On Tuesday his wife called the employer for the purpose of having some one put in his place temporarily. On Thursday he returned to his place of employment and was told he had been discharged. From there he went to see Dr. Ridgely, who was the employer's physician, and was told by the doctor to go home and rest, and come back Saturday, and if he was not feeling well he would "fix him up free of charge." He did not go back to Ridgely, but consulted his family physician, Dr. Kourey, who examined him and found no external marks or bruises upon his back, but did find him suffering from pain, "rigidity of the muscles and spasm of the muscles"; that his diagnosis was based on this, and "expression of the face and bending on response to pain." His examination consisted of "palpation, bending anteriorly, posteriorly and laterally, and found the limitations were marked." His diagnosis was that the claimant was "suffering from a sprained or strained back." The doctor prescribed rest in bed and hot applications, and on the following day strapped the claimant, using adhesive plaster strapping across the lumbar sacral region of the back, and the strapping continued for about two weeks, or up to about one week before the commission's hearing. The record contains evidence offered by the employer and insurer, through the testimony of one of the claimant's fellow workmen, and Dr. Ridgely, which is in conflict with that offered on behalf of the claimant; and consideration of this conflicting testimony, and the proper determination, was for the jury. It is within the province of the jury to believe or disbelieve any witness and make a decision accordingly. If the jury believed the evidence on behalf of the claimant which remained in the case (after the exclusion of the testimony

which we have decided should not have been admitted), which they had a right to do, it was sufficient upon which to base a verdict; and the refusal of the appellants' prayers for a directed verdict was proper.

It follows from what we have said that the judgment from which this appeal was taken must be reversed.

*Judgment reversed, and case remanded for a new trial, with costs to the appellants.*