# BETHLEHEM STEEL COMPANY *v.* ANTONIO DE MARIO.

## [No. 116, October Term, 1932.]

*Decided February 17th, 1933.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*George Weems Williams* and *Boyd B. Graham,* with whom were *Marbury, Gosnell & Williams* on the brief, for the appellant.

*George Z. Ashman* and *Harry J. Green,* with whom were *Weinberg & Sweeten* on the brief, for the appellee.

DIGGES, J., delivered the opinion of the Court.

This is an appeal from a judgment of the Superior Court of Baltimore City, reversing the decision of the State Inudstrial Accident Commission wherein the claimant was denied compensation. The first exception which we are asked to consider is the overruling by the trial court of the defendant's motion to dismiss the claimant's appeal in that court. The facts in respect to the time and manner of taking that appeal are wholly analogous to those presented and passed upon in *Monumental Printing Co. v. Edell,* 163 Md. 551, 164 A. 171, namely, that while the notice of the appeal to the superior court was served on a member of the commission, and such service admitted within thirty days from the commission's finding, no suit was docketed or other paper filed in that court to indicate that the appeal had been taken. This question is controlled by the decision in the *Edell* case, *supra;* and, for the reasons therein stated, the motion to dismiss was properly overruled.

The case was tried before a jury to whom two issues were presented; the first requested by the claimant, and the second by the defendant: (1) "Was the claimant disabled after March 15th, 1931, as the result of an accidental injury arising out of and in the course of his employment?" The

answer of the jury to this issue was "No." (2) "Was the claimant, Antonio de Mario, permanently partially disabled as the result of an accidental injury on or about December 10th, 1930, arising out of and in the course of his employment by the Bethlehem Steel Company?" The answer of the jury to this issue was "Yes." The defendant filed exceptions to the claimant's issue, which were overruled. The case was tried on the evidence contained in the record as made before the commission. At the close of the evidence the claimant offered two prayers, which were granted. The defendant offered six prayers; the first two, designated as A and B prayers, were refused, and the remainder granted. The defendant excepted to the rejection of its A and B prayers. The fourth exception was to the overruling of the defendant's motion for a new trial; and the fifth and final exception was to the overruling of the defendant's motion in arrest of judgment.

The defendant's A and B prayers directed an answer to issues 1 and 2, respectively, in favor of the defendant. The correctness of the court's ruling on defendant's A prayer is immaterial, because by that prayer the court was asked to instruct the jury that their answer to the first issue should be "No"; and, while this prayer was refused, the answer of the jury to the issue to which the prayer referred was "No," and therefore in accord with the request contained in the rejected A prayer.

The defendant's B prayer requested the court to instruct the jury "that there is no legally sufficient evidence in this case to show that the appellant Antonio De Mario was permanently partially disabled as a result of an accidental injury sustained by him on or about December 10th, 1930, arising out of and in the course of his employment with the Bethlehem Steel Company, and therefore the answer of the jury to the Bethlehem Steel Company's issue must be 'No.'" The effect of granting this prayer would have been to hold that there was no legally sufficient evidence in the case upon which the jury might find that the claimant was permanently partially disabled as a result of the accident. The evidence

offered on behalf of the claimant tends to establish facts which may be substantially thus stated: That the claimant had been employed by the defendant as a foreman in its plant for approximately fourteen months prior to December 10th, 1930, the day of the accident; that on that day, while the claimant in the course of his employment was working on top of a "chute" at "No. 4 blast furnace," the chute gave way and he fell, striking the right side of his body, right shoulder, and right side of the face on iron and heavy steel; that upon prompt application by the claimant, together with the report of the defendant and its physician, the State Industrial Accident Commission, by its decision and order of January 13th, 1931, found that the claimant was temporarily totally incapacitated as a result of the injury, and awarded compensation at the rate of eighteen dollars per week during the continuance of his disability, beginning as of the 15th day of December, 1930, subject to the provisions of the Workmen's Compensation Law; that the payment of such compensation continued until March 3rd, 1931; that although the claimant returned to work on March 4th, he continued to complain of injury to his right shoulder and severe pain therein, especially when he attempted to make full use of his right arm; that these complaints were made to the defendant's physician, who continued the examination and treatment of the claimant, making X-ray of the affected arm and shoulder, "baking with a flashlight or electrical apparatus," and administering drugs internally; that on November 11th, 1931, the claimant was "furloughed or laid off" and was told by the superintendent of the defendant to again see its physician, which the claimant did, at which time another X-ray picture was made, and claimant was told by the physician: "Your arm does not hurt you, it might be something in there (pointing to his head)." "After that I did not see Dr. Shaffer any more"; that the pain and injury to his arm and shoulder continued to the day of the hearing; that shortly thereafter the claimant filed a petition with the commission requesting a reopening of the case and a hearing to determine whether or not there existed any

permanent partial disability as a result of the accidental injury; that at such hearing, held January 7th, 1932, Dr. Sarubin, whose qualifications were admitted, testified that he had examined the claimant in November and December, 1931, the first examination being shortly after claimant left the defendant's employ; that he made a complete examination, at which time the claimant gave him a history of the injury and was at that time complaining of pain in his right shoulder and thumb; that he examined him with special reference to ascertaining whether the claimant was "faking" or whether he was honest about his pain, and "found upon examination when I stripped him and moved his arm accidentally, when he was not even watching, he screamed with pain when the arm was lifted above his shoulder and the same thing also when he moved that arm backwards. At that time I made a diagnosis, probable diagnosis of one or two things, either traumatic arthritis or synovitis"; that in order to determine which of these conditions in fact existed, he took an X-ray picture; that the presence of arthritis is always shown by such an investigation, but that synovitis does not show in the X-ray picture; that finding no arthritis by this process of elimination, he concluded and diagnosed the case as one of "chronic synovitis."

In describing synovitis the witness said: "In the shoulder there is a membrane which covers the shoulder joint to produce a lubricant for the shoulder so there will be free motion in the arm itself. That membrane which produces its lubrication is known as the synovial membrane. Injury to this membrane might cause a tying up of the membrane or not secreting enough lubricant or else it might produce an effusion or more than normal fluid in the joint. Probably at the time of injury he might have had more than necessary fluid, after that this fluid was absorbed and it would remain in more or less a dry condition and the trouble this man has is chronic synovitis which has become chronic in the shoulder joint." He was then asked: "Doctor, such a condition as you described, would that, in your opinion, be brought about by an injury such as Mr. De Mario described here? A. Yes, it

probably was.   Q. That is, falling against iron or steel or some hard substance as he described?   A. Against anything. Q. In your opinion, is this condition of which Mr. De Mario complains now likely to disappear or do you think it is likely to continue?   A. It is chronic and he will probably have chronic arthritis and that disability in the shoulder all the time, it is permanent.   Q. How much loss of use of the arm would you say he has as result of this?   A. About twenty-five per cent.   Q. You think there will be any improvement over that?   A. I don't think so."

Dr. Shaffer, the defendant's witness, also testified at the hearing; but we find nothing in his testimony in substantial conflict with that of Dr. Sarubin; and, even if we did, it could avail the defendant nothing in determining the question of whether or not a verdict should be directed for the defendant.   In such an inquiry we must assume the truth of the evidence introduced on behalf of the claimant.   We conclude on this point that it was a case for the jury, and the rejection of the defendant's B prayer was proper.

The third exception in the record arises out of the overruling of the defendant's exception to the claimant's issue. The alleged ground of the exception to that issue is that it is "indefinite and misleading in that it does not specify the type of disability."   Considering the circumstances of the whole case, we do not think this issue is fairly subject to this criticism.   As the case went to the jury, there were two issues: first, as to whether or not the claimant was the subject of any disability at all at the time of the hearing before the commission, and, second, whether or not that disability, if found, was of a permanent character.   It must be remembered that the plaintiff had been awarded compensation for temporary total disability extending from December 15th, 1930, to March 3rd, 1931, at which time all compensation ceased; the effect of such cessation of compensation being that at that time temporary total disability did not exist.   At the trial, if the evidence justified, the jury could have found the existence of either temporary partial disability or permanent

partial disability. Under the defendant's issue the jury was confined to whether or not partial disability existed which was permanent in its nature, and, even though the evidence justified a finding of temporary partial disability, their answer to the defendant's issue would have had to be "No." While the claimant's issue may be said to be inartificially drawn, and not so clear and definite in its language as strict technical pleading might require, nevertheless, we think that it, in conjunction with the defendant's issue, fairly contained the questions for the jury's decision, and that the overruling of the defendant's exception to the claimant's issue was not reversible error.

The fourth exception is to the overruling of the defendant's motion for new trial. That action is not reviewable in this court.

The fifth and remaining exception is to the overruling of the defendant's motion in arrest of judgment, and presents a question of more difficulty. This motion is based upon the contention that the answers of the jury to the issues submitted are so contradictory as to form no proper basis for a judgment. To repeat, the claimant's issue is: "Was the claimant disabled after March 15th, 1931, as the result of an accidental injury arising out of and in the course of his employment?" The jury's answer to that question was "No." The claimant's prayer, which was granted, instructed the jury "that if they find from the evidence that Antonio De Mario was disabled from work after March 15th, 1931, as a result of an accidental injury arising out of and in the course of his employment, then the answer of the jury to the claimant's issue must be 'Yes.'" The jury's answer to that issue was "no," which was, in effect, saying that the jury found that the claimant was not disabled from work after March 15th, 1931, as a result of the accidental injury arising out of and in the course of his employment. By the defendant's granted prayer in respect to this issue, the jury were told "that if they find from the evidence in the case that the appellant Antonio De Mario was not disabled on and after March

15th, 1931, as a result of an accidental injury sustained by him on or about December 10th, 1930, arising out of and in the course of his employment with the Bethlehem Steel Company, then their answer to the appellant's " (claimant's) "first issue must be 'No.' " This prayer was, in legal effect and common sense, the same as the claimant's first prayer. In the claimant's prayer the jury were told that if they found the facts therein stated, their answer to the issue should be "Yes," whereas by the defendant's prayer they were told that if they did not find the facts (the facts being the same), their answer to the issue should be "No." By the claimant's second prayer, directed to the defendant's issue, the jury were told that if they found from the evidence that Antonio De Mario was permanently partially disabled as a result of the accidental injury arising out of and in the course of his employment, then the answer of the jury to the employer's issue must be "Yes"; while by the defendant's prayer directed to this issue the jury were instructed that if they found from the evidence in the case that Antonio De Mario was not permanently partially disabled as a result of an accidental injury sustained by him on or about December 10th, 1930, arising out of and in the course of his employment with the Bethlehem Steel Company, then their answer to the Bethlehem Steel Company's issue must be "No." They answered "Yes" to this (the defendant's) issue, thereby finding that the claimant was permanently partially disabled as a result of the accidental injury sustained on December 10th, 1930, and that such permanent partial disability existed on and after March 15th, 1931. By the answer to one issue, they found that the claimant, after March 15th, 1931, was not disabled at all; and by the answer to the other issue, they found that he was, on and after that date, partially disabled, and that disablement was permanent in its nature. The only possible way that the answers to the two issues can be reconciled is to say that the jury understood the first issue to be an inquiry as to whether or not the claimant was suffering from disability caused by an accident, which accident

occurred after March 15th, 1931. The record is barren of any evidence of an accident after March 15th, 1931, by which the claimant was injured; and it is difficult to understand, in the face of the instructions contained in the granted prayers, how the jury could have so interpreted the claimant's issue. They may have done so; but to so hold would be for the court to speculate as to the intention of the jury in making answers to the two issues, which answers are contradictory. Under such circumstances, we do not feel that these answers can properly be made the subject of a valid judgment; and the case should be remanded for a new trial in order that clear, definite, and unambiguous answers may be made to the issues propounded.

For error in overruling the appellant's motion in arrest of judgment, the case must be reversed and remanded for a new trial.

*Judgment reversed, and new trial awarded, with costs to the appellant.*