THERESA K. ROSS *v.* FLORENCE R. SMITH
[No. 21, April Term, 1935.]

*Decided May 22nd, 1935.*

The cause was argued before OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Rignal W. Baldwin, Jr.,* with whom were *Harold Tschudi, Semmes, Bowen & Semmes,* and *Newman & Newman,* on the brief, for the appellant.

*W. Clinton McSherry* and *Robert E. Clapp, Jr.,* for the appellee.

PARKE, J., delivered the opinion of the Court.

William C. Smith, a servant of Theresa K. Ross, trading as Monocacy Valley Canning Company, was injured on September 7th, 1933, while at work, and died eleven days later. His widow presented her claim for compensation under the Workmen's Compensation Act (Code, art. 101, sec 1 *et seq.,* as amended) and the master and her assurer denied liability. The State Industrial Accident Commission found for the master on the issues of whether or not the injury and death of the servant were the result of an accidental personal injury arising out of and in the course of his employment, and disallowed the claim. On appeal from this order to the Circuit Court for Frederick County the two issues submitted to the jury were whether or not the servant sustained an accidental personal injury arising out of and in the course of his employment, and whether or not his death was the result of such an injury. The finding of the jury was for the claimant on both issues, and the court entered a judgment reversing the order of the commission, and remanding the cause to the State Industrial Accident Com-

mission. The appeal of the master and assurer is from this judgment.

The master operates a cannery where the servant had been employed for a number of years. He worked a crane, which moved, raised, and lowered the large crates or baskets that contain the cans for introduction into the process kettles where the contents of the can are cooked and then withdrawn and the crates emptied to be refilled for a repetition of the operation. The arm of the crane was from twelve to fourteen feet above the floor of the cannery, and two chains ran along its length. The smaller chain passed over what the witnesses called a "shear" (sheeve) wheel. The larger chain weighed from one hundred and five to one hundred and ten pounds.

While the servant was working the crane, at night, the wheel broke and rendered the crane useless in the midst of the busiest period of the day. An immediate replacement of the broken wheel by a sound one was necessary. The superintendent of the cannery, who makes the repairs, was notified and he got a good wheel, placed a ladder against the crane, and he and the craneman climbed up the ladder and both got astride of the arm of the crane. While the superintendent was putting the new wheel in the place of the old one, the craneman had to hold the weight of the heavy chain for about ten minutes. The heavy chain slipped away from the superintendent, and the craneman got it again and he and the superintendent "hooked it up." The craneman oiled the chain for some few minutes, and then the superintendent told the craneman to get down and that he would right the chain. In obeying this order the craneman had to leave the arm on which he was sitting astride, and get on the ladder before he could begin to climb down. The superintendent stated that as the craneman got down the ladder he "took notice when he got down  he got this way (indicating) he pulled himself," but that what happened while the craneman was climbing down the superintendent could not see, as his back was to the craneman.

At the end of two hours the craneman complained of

cramps, put out the lights, and went home, and returned to work early the next morning, which was Saturday. He said that he continued to have the cramps and had vomited in the night, but kept at work. He did not come back on Monday, but remained home where he continued to have cramps and to vomit until he was taken by the superintendent to the hospital one week after the accident. On the way he said to the superintendent that he had strained himself. When the witness's attention was called to his previous statement to the investigator of the insurance carrier that "Mr. Smith told me he thought he had twisted himself," the witness did not deny that this was his statement. After stating that "strained or twisted himself" were "pretty near the same thing," the witness, after further inquiry for the purpose of having him testify precisely to what the craneman had actually said, finally stated that the craneman had said he "must have twisted himself," and, also, something further, which the witness could not understand, in reference to the crane.

The surgeon, who operated upon the injured man, testified that the patient, in giving the history of his case, had informed the surgeon that he had twisted his side four or five days previously and that pain in his right side had followed. There is an apparent difference of several days between the time of the craneman's receiving his injury and his estimate of the number of days that had passed since the twisting of his side. However, the circumstances are such as to make it a question for the jury to decide whether the occurrence to which the patient referred was not what had happened at the time his injury occurred at the cannery. In connection with these declarations is the one that "he thought he had strained himself on the crane" which he made to Charles W. Ross, 3rd, on the way to the hospital. This witness is the son of the employer, and accompanied the craneman to the hospital.

In the consideration of the testimony, the court must regard it as an entirety, and is bound to consider the

declarations of the dead workman, which were admitted in evidence without objection. There is, therefore, testimony from which the jury may find that the servant was suffering from an irreducible hernia which had existed for several days before the day of his injury while at work in his master's employment. Although an operation, and not a truss, was indicated because of the irreducible nature of the lump on his right side, the servant had worked regularly and he had not experienced much trouble from his condition. In addition, testimony was offered from which it may be found that the servant had received an injury on the night of September 7th that caused a strangulated hernia which was the direct cause of his death. So, there was testimony from which the jury could properly infer that the personal injury which the servant had sustained arose out of and in course of his hazardous employment and was the cause of his death. The main controversy is, therefore, whether the injury was, in addition, accidental within the contemplation of the statute.

The performance of the service was rendered necessary by the fortuitous breaking of a part of the crane whose soundness was required for the operation of the machine. The service exacted of the servant was, therefore, unusual and the direct result of an accidental breaking of an indispensable part of the crane. The accident to the machine, however, had not resulted in an injury to the servant, and, so, if the injury to the servant be accidental, it must be by some subsequent happening during the course of the repair to the crane. What the jury was able to find from the testimony, in the light of the circumstances, was that the injury occurred while the servant was sitting astride the arm of the crane, as the direct result of a twist of his body which had been inflicted while the servant was riding the arm of the crane, pulling the slack, and holding free of the crane a chain of not less than one hundred and five pounds for a period of about ten minutes, during which time the chain slipped away from his co-worker, the superintendent, and

was recovered by the servant and hooked up by him and his co-worker.

A twist of a part of the human body while engaged in the performance of some physical labor implies a sudden, unforeseen, and unnatural bodily position or movement or muscular distortion that generally occurs without anticipation and usually is the effect of some mishap. In the performance of labor, the servant frequently subjects himself to physical strain, and if personal injury result because of the severity or the duration of the strain, the injury is the natural, if unexpected, consequence whenever the exertion is to the utmost. On the other hand, according to the law of their creation, the members of the body and their muscles function in harmony and co-ordination, and, therefore, no one naturally assumes a position nor makes a movement that is in conflict with the physical laws under which the body functions. It is when the members of the body and their muscles are wrenched out of natural shape or are distorted by the application of external force that a twist results. Sometimes the word "strain" is used in this sense, and then it is a synonym of sprain, wrench, or twist. Century Dictionary, Standard Dictionary.

It is, therefore, clear that the twist that was inflicted upon the servant in the course of his work while riding the arm of the crane was not a natural result that could fairly be assumed to have been intended or expected as a result of any act of the servant. Furthermore, the facts and circumstances under which the servant was performing his work tend to establish that the twist of the servant's side was produced by some sudden, unintended, movement of the heavy chain which caused the affected parts of the servant's body to be forced or thrown from a normal state into a hurried, unexpected, and unnatural or distorted position which, by this chance and mishap, injured the servant while on the arm of the crane. It will be remembered that while the servant was engaged in supporting the weight of the heavy chain and taking up its slack, it accidentally slipped away from the super-

intendent, and that compelled the servant, while on the arm, and in a precarious position, to recover the chain and, with the superintendent, to hook it up.

The time and place of the injury were fixed under circumstances which, in the popular and ordinary sense of the term, would denote an unlooked for mishap or an untoward event which was neither expected nor designed. If the lifting and holding of a heavy chain under difficult, insecure, and unusual conditions should cause a rupture, the injury would, in ordinary acceptation, be described as an accident. The fact that the strangulated hernia followed a rupture which probably predisposed the servant to the fatal accident would seem to be immaterial, as the predisposition related to the degree of chance involved. *Tragle v. Hollis Chocolate Co.*, 111 Pa. Super. 98, 169 A. 472, 473. The conclusion that the strangulated hernia was the result of an accidental injury is supported by a number of decisions to be found collected in Schneider's Workmen's Compensation (2nd Ed.) secs. 200, 335. See *Kauffman Const. Co. v. Griffith*, 154 Md. 55, 139 A. 548; *Schemmel v. T. B. Gatch & Sons Contracting & Building Co.*, 164 Md. 671, 680, 166 A. 39; *Waddell George's Creek Coal Co. v. Chisholm*, 163 Md. 49, 161 A. 276; *Monumental Printing Co. v. Edell*, 163 Md. 551, 164 A. 171; *M. P. Moller Motor Car Co. v. Unger*, 166 Md. 198, 207, 170 A. 777.

The old hernia with which the servant was suffering for some years before the accident occurred is not the hernia for which compensation is claimed.

The compensable injury here is a strangulated hernia which did not exist before the accident but which was directly caused by the accident. Acts 1931, ch. 363, amending Code, art. 101, sec. 36, does not apply as a bar to the claim at bar. Compare *Lloyd v. Webster*, 165 Md. 574, 169 A. 202; *Tragle v. Hollis Chocolate Co., supra; Standard Gas etc. Corp. v. Baldwin*, 152 Md. 321, 328, 136 A. 644; *Federal Tin Co. v. Hoffman*, 164 Md. 431, 165 A. 323; *Dickson Const. & Repair Co. v. Beasley*, 146 Md. 568, 575, 126 A. 907. Here the strangulated hernia

caused the servant's death, and, where death ensues, there is no basis for the determination of the proportionate disability attributable to an old hernia and to the later strangulated hernia, as is required by the statute in case of a disability that is due in part to an accidental injury and, in part, to a pre-existing disease or infirmity. Code, art 101, sec. 36, subd. 4, as amended by Acts 1931, ch. 363, sec. 1, p. 914. The disability of a servant is conditioned on his being alive.

It follows from the conclusion here expressed that there was no error committed by the *nisi prius* court in refusing the prayers of the employer and insurance carrier to direct a verdict on the issues in their favor.

Finding no errors in the rulings the judgment will be affirmed.

*Judgment affirmed, with costs to the appellee.*