## G. L. BAKING COMPANY ET AL. *v.* IRVIN L. WICKHAM

[No. 48, April Term, 1940.]

*Decided May 23rd, 1940.*

The cause was argued before OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, JOHNSON, and DELAPLAINE, JJ.

*William D. MacMillan,* with whom were *William M. Storm, Harold Tschudi,* and *Semmes, Bowen & Semmes* on the brief, for the appellants.

*Benjamin B. Rosenstock,* for the appellee.

MITCHELL, J., delivered the opinion of the Court.

Irvin L. Wickham, an employee of the G. L. Baking Company, one of the appellants, who for nine years had been in the employment of the company, on August 1st, 1939, was engaged with other employees in removing garbage and waste from the premises of the company and in grading said premises. The grading work had been started a few days prior to August 1st, and on that date stone dust was being placed over the surface to harden the area covered by the operations.

During the course of the work William D. Morton, in charge of maintenance, ordered that certain garbage and waste contained in drums be removed, and, in company with Raymond E. Marken and Walter E. Summers, Wickham proceeded to carry out the orders. They lifted several light drums to the body of a truck, which were easily handled, and then undertook the removal of a drum which contained sand, mortar, other heavy material, and water. This drum was tilted and the water poured off, whereupon it was rolled to the truck, and Wickham and Summers lifted it while Marken steadied the top. They first lifted the drum from the ground to the rear bumper of the truck, a distance of approximately twenty-eight inches, when, according to testimony of the claimant, "a sharp pain hit me on my right side, * * * we picked it up, raised it up to the back of the truck. Then the pain got more severe." Mr. Marken's

version of the incident is that "on the first lift Mr. Wickham complained of his side, and on the next lift, we all three lifted again, and on the next lift when we all got it in the truck, he complained more."

The claimant testified that as soon as the drums, with the assistance of Marken, had been emptied, he went home, as the pain was getting worse all the time. Meanwhile he noticed that a lump about the size of his fist had "raised" on his left side, and, when he got home, he summoned Dr. Ash, who administered to him, and upon whose advice he was operated on for strangulated hernia by Dr. Worthington at approximately eight o'clock in the evening of the day of the accident.

The claimant testified that his usual work consisted of oiling, greasing, sweeping, cleaning, and repair work; that about once a month the truck was loaded with refuse placed in drums; that the drum in question was especially heavy; that usually it took four or five men to lift such weight; that the latter drum and contents weighed from 400 to 450 pounds, whereas the usual drum and contents weighed from 100 to 150 pounds; and that grading work was out of his usual line of pursuit. He also testified that three months prior to the accident, while in the course of his employment, he twisted his body and a small knot developed which would disappear at times and then reappear when he came to "a solid lift of some kind."

The following testimony was developed on the cross-examination of the claimant: "Q. The barrel didn't slip or fall, did it? A. Well, on the lift it could have shifted I believe a little to my side on account of Summers being a little bit taller than I was. When I made the second lift I tried to grab an extra holt, which could have shifted to my side. Q. But you don't know whether it did or not? A. Whether it did or not I don't know. Q. You didn't slip or fall, did you? A. No sir."

The appeal is prosecuted by the employer and insurer from a judgment of the Circuit Court for Frederick County, entered upon the verdict of a jury for the claim-

ant-appellee, which verdict was rendered on the single issue in the case, namely: "Did claimant sustain an accidental personal injury within the meaning of the Workman's Compensation Law of Maryland, on August 1st, 1939?" This judgment affirmed the prior order of the State Industrial Accident Commission awarding the claimant compensation at the rate of twelve dollars per week during the continuance of his temporary total disability.

The sole question involved, therefore, is with respect to the refusal of the trial court to grant either or both of the appellants' demurrer prayers, to the effect (a) that there was no legally sufficient evidence in the case to show that the claimant sustained an accidental personal injury on August 1st, 1939, and (b) that the uncontradicted evidence in the case shows that the claimant did not sustain such accidental personal injury.

It is urged by the appellants that the trial court erred in not granting one or both of their demurrer prayers upon grounds as follows: (1) that the claimant, three months prior to the accident complained of, sustained a hernia which continued to manifest itself, and from which, it is contended, he suffered as late as the day previous to the accident; and (2) that the work in which he was engaged at the time of the accident was the usual and ordinary work he performed for his employer. Furthermore it is submitted that there was no evidence tending to show that the claimant slipped or fell, that anything struck him, that the drum shifted to his side, that it was too heavy for three men to lift, or that any unusual or extraordinary strain was imposed in the operation.

These contentions, in our opinion, substantially ignore the affirmative testimony. It is undisputed that the regular duties of the claimant were those of janitor and helper, and that the grading referred to in the testimony was special and temporary work in the performance of which he was assisting. Ordinarily he swept and cleaned the premises of his employer, stored the debris in drums,

and at stated periods, in conjunction with other help, removed it to a general dump.

It is also shown that the drums when filled were not uniform in weight, and that sometimes four or five men were engaged in lifting the heavier ones to the carriers. But notwithstanding these facts, it would not follow that an occasion might not arise, during the course of employment, when, without thought of the consequences, an employee might undertake to lift more than his physical strength would endure. The testimony tends to show that the drum in question weighed between 400 and 450 pounds and that two men lifted it while a third steadied it. It contained sand and mortar upon which water from the eaves of the roof of a building had flowed, and the contents were soaked and heavy. But it did not have to weigh a fixed amount in order to establish the claimant's case, nor did he have to slip or fall or be struck by the drum for the purpose of establishing his injury. What the workman's compensation law of this state contemplates is not the plausibility of the manner in which an accident to an employee occurs, but whether the injury sustained in such accident arises out of and in the course of his employment, subject to the exceptions reserved in the act, which exceptions do not apply in the instant case.

It is true that the claimant, according to his own testimony, had, three months prior to the injury of which he now complains, suffered from a strain incurred in the performance of his regular work. The witness Summers testified that the claimant told him the day before the accident that "he felt a little sore in the lower part of his stomach." That ailment, however, would not necessarily indicate hernia, and the claimant testified that on the morning of the accident he had a slight pain in his side which he thought "came from gouging in that tin and glass and refuse that came from the bake shop when we were grading around there." "Q. You were cleaning up the yard? A. No, this grading we were doing that day." The uncontradicted testimony is that

the ordinary and usual weight of the drums was from 100 to 150 pounds and that extra heavy drums were removed, as stated, by four or five men. On the day of the accident, the claimant was engaged in grading, which, as we have seen, was out of his usual line of work, and it is apparent that it was not his ordinary routine to participate in lifting the indicated weight with only the assistance the testimony shows he had.

Section 36 of article 101 of the Annotated Code of this State, as amended by chapter 329 of the Acts of 1937, among other things provides as follows: "In all claims for compensation for hernia, compensation may be allowed only upon definite proof to the satisfaction of the Commission: First. That there was an accidental injury causing hernia, arising out of and in the course of the employee's employment. Second. That the hernia did not exist prior to the injury for which compensation is claimed; provided that if as the result of an accidental injury arising out of and in the course of the employee's employment a pre-existing hernia becomes so strangulated that an immediate operation is necessary, the provision of this sub-paragraph requiring proof that the hernia did not exist prior to the injury for which compensation is claimed shall not apply."

Turning now to the argument advanced that, because there is no affirmative evidence that the claimant slipped or fell, or that he was struck by anything during the process of the lift now under consideration, and disregarding the fact that the co-employee who helped him to lift the heavy drum from a position on the opposite side of it was slightly taller than the claimant, it is our conclusion that such outward visible evidences of injury are not essential to recovery.

In the recent case of *Ross v. Smith,* 169 Md. 86, 179 A. 173, 175, the employee was subjected to the extraordinary work of helping his superintendent to repair a crane. While astride of the crane a heavy chain slipped away from the superintendent, and the employee recovered it and held it for about ten minutes. The employee

did not slip, nor did he receive a blow, although he may have been subjected to greater strain when he recovered the chain than before it slipped from the superintendent. It was held that there was in that case testimony from which the jury might find that the servant had twisted his side, several days before the accident, and this court, speaking through Judge Parke, in disposing of the case, said: "There is an apparent difference of several days between the time of the craneman's receiving his injury and his estimate of the number of days that had passed since the twisting of his side. However, the circumstances are such as to make it a question for the jury to decide whether the occurrence to which the patient referred was not what had happened at the time his injury occurred at the cannery. * * * A twist of a part of the human body while engaged in the performance of some physical labor implies a sudden, unforeseen, and unnatural bodily position or movement or muscular distortion that generally occurs without anticipation and usually is the effect of some mishap. In the performance of labor, the servant frequently subjects himself to physical strain, and if personal injury result because of the severity or the duration of the strain, the injury is the natural, if unexpected, consequence whenever the exertion is to the utmost. * * * The compensable injury here is a strangulated hernia which did not exist before the accident but which was directly caused by the accident."

The case of *Atlantic Coast Shipping Co. v. Stasiak,* 158 Md. 349, 148 A. 452, 453, relied on in support of the appellant's contention, is not analogous to the instant case. There the claimant was a stevedore, and while in the course of his employment developed a hernia. He testified: "We were loading tin plate on trucks, and I was throwing it to my partner, there were two of us, and then I felt a pain * * * then I pressed at the place where I felt the pain and the pain disappeared, and then I continued to work until five." This court, in reversing a judgment in favor of the claimant, said:

"The injury did not result from any external force, and there is nothing in the record to indicate that there was any unusual strain or any conditions not incident to the work in which he was engaged." See also *Jackson v. Ferree,* 173 Md. 400, 196 A. 107, 109, wherein it is stated that: "Such an injury as the statute contemplates means any fortuitous, casual, and unexpected happening which causes personal disability or death resulting from unknown cause or from the unexpected and unusual operation of a known cause." See also *Standard Gas Equipment Corp. v. Baldwin,* 152 Md. 321, 136 A. 644.

It is significant that in the instant case the claimant was stricken as soon as he lifted the drum, that on the same day he was operated upon, and that the surgeon who operated upon him testified that in his opinion the strangulation of the hernia had not existed longer than two hours. Whether the claimant was or was not predisposed to develop hernia because of a former strain, we are of the opinion that, under the uncontradicted facts in the case, there was sufficient evidence from which a jury could conclude that the accident of which he complains either accelerated an existing rupture or developed a strangulated hernia. In either contingency, we conclude that the trial court was without error in refusing the demurrer prayers of the appellant. *Tragle v. Hollis Chocolate Co.,* 111 Pa. Super. 98, 169 A. 472; *Schneider's Workman's Compensation* (2nd Ed.) secs. 200, 335; *Kauffman Const. Co. v. Griffith,* 154 Md. 55, 139 A. 548; *Schemmel v. T. B. Gatch & Sons, etc., Co.,* 164 Md. 671, 166 A. 39; *Waddell George's Creek Coal Co. v. Chisholm,* 163 Md. 49, 161 A. 276; *Monumental Printing Co. v. Edell,* 163 Md. 551, 164 A. 171; *M. P. Moller Motor Car Co. v. Unger,* 166 Md. 198, 170 A. 777; *State Roads Commn. v. Reynolds,* 164 Md. 539, 165 A. 475, 479.

> *Judgment affirmed, with costs to the appellee.*