## STROUT'S CASE.

### Hancock.    Opinion February 10, 1928.

*The evidence upon which a claim for continued compensation under the Workmen's Compensation Act was based, was plainly incompetent and inadmissible.*

In this case the accident occurred on December 20, 1926, and the hearing was held on June 21, 1927. It is evident that the period for which the petitioner should have compensation had ceased long before the hearing. The injury was to the eye. The petitioner attempted to show that prostate trouble lengthened the period during which he should receive compensation. The evidence upon this point was plainly incompetent and inadmissible.

On appeal by respondents. Petition of Emery Strout for compensation for an injury sustained by him while in the employ of Whitcomb, Haynes & Whitney as a horse feeder alleging that as he was working around a horse it switched its tail into petitioner's eye, as a result ulcers formed on his eye causing a partial loss of sight. Compensation was awarded beginning December 30, 1926, and to continue so long as temporary total incapacity should last, and from an affirming decree respondents appealed. Case remanded for the purpose of determining the amount of compensation legitimately due on account of the injury to the eye. The case fully appears in the opinion.

*Harry L. Crabtree*, for petitioner.

*Eben F. Littlefield and William B. Mahoney*, for respondents.

SITTING: WILSON, C. J., PHILBROOK, DUNN, BARNES, BASSETT, PATTANGALL, JJ.

PHILBROOK, J. Petition for award of compensation under the provisions of the Maine Workmen's Compensation Act filed with the Industrial Accident Commission on April 28, 1927. The petitioner

was employed in the stable of the defendant and while so employed, according to the findings of the Associate Legal Member of the Commission, a horse switched its tail in the face of the petitioner, the hairs evidently cutting his eye ball sufficiently to cause him pain and much inconvenience at once and thereafter. The accident upon which the petitioner relies occurred on December 20, 1926. On December 24, while in the woods to obtain a Christmas tree for his grandchild, an act in no way connected with his employment, the branches of the tree hit him in the face, and the insurance carrier relies upon this event as the incapacitating cause of the injury to the eye.

The petitioner testified that immediately after the horse switched his tail across the eye he had to go and sit down and that his eye turned red and was inflamed. A fellow employee, who was present when the accident occurred, testifies "He put his hand right over his eye and said 'I've got to go and sit down' and so he went over on the hay there and flopped down." The same witness testified that he saw the petitioner the next day and that the eye was then "all red and inflamed"; and that the condition and inflamation continued for some days. In cross examination the latter witness said that he noticed that the eye was inflamed immediately after the horse's tail hit it and that as soon as the petitioner sat down the witness said to him "Your eye is inflamed"; and that the next morning the eye run much water.

He told one of his employers that his eye was injured by the Christmas tree which he was fixing for his grandchild. Another one of the employers testified that the petitioner told him that he was struck by a Christmas tree. The surgeon who performed the operation on the eye said that in getting a history of the case the petitioner told him that he had been hit in the eye with a Christmas tree but later stated that he was working around horses and one of the animals switched his tail and struck him across the eye, causing considerable discomfort. On the first inquiry the physician got no history of the blow from the horse's tail. We quote the following questions addressed to the physician and his answers thereto:

"Q. Did you have any talk about compensation with the man?

A. He asked me, when he spoke about the horse's tail, if I thought that caused it and I told him it could have or the other could have or both could have and he said 'Well, if I am entitled to it I want it and if not I don't; I don't know.' And I told him I didn't know. You see I didn't see him for a week after the last injury and they came pretty close together so I didn't know how I could tell."

\*    \*    \*    \*    \*

"Q. Do you remember how he happened to be speaking the second time about the history of his injury? Do you recall the circumstances?

A. Why simply that as he said he recognized that he would get compensation for that and for that reason he wanted to know.

Q. You were unable to tell him which it might have been?

A. I told him, just as I said, that it could have been from either one and without knowing myself I could not tell by the looks of it then which caused it. All I knew, it was injured."

On redirect examination the petitioner testified as follows:

"Q. The doctor says you told him the history of your injury was the injury from the Christmas tree when you first came and then after about three days he thinks you told him that you had been hit in the eye with the horse's tail prior to the Christmas tree injury?

A. Yes, sir; I did.

Q. Why didn't you tell him, if you knew, about the horse's tail in the first instance?

A. I didn't remember and my eye was paining me so that I didn't remember; that is all that I can tell you."

In *Mailman's Case*, 118 Me. 172, it was held that in order to support a decree that there must be some competent evidence; it may be slender but it must be evidence and not speculation, surmise or

conjecture; and in *Swett's Case*, 125 Me. 389, it is stated that if a decree for compensation is founded upon speculation, surmise or conjecture it cannot stand. In the case at bar the defendants strenuously urge that the decree for compensation was not supported by competent evidence and that it was based entirely upon guess, surmise and conjecture. The case is dangerously near the border line but there is some evidence on which to base the finding of the Associate Legal Member that the disability was due to the blow received from the horse's tail. We allow that to stand under the familiar rule of finality as to his decision upon all questions of fact in the absence of fraud.

While the petitioner was receiving treatment for his eye he was taken to the Eastern Maine General Hospital where he underwent an operation upon the prostate gland. By reason of this last operation he was confined to the hospital for some time and claimed to be in a weakened condition at the time of the hearing upon his petition which was June 21, 1927. The only attempt to connect the eye trouble with the prostate gland trouble was the evidence of the petitioner himself that the doctor (a surgeon other than the eye specialist) said that the prostate trouble was due to his lying around the hospital. This was incompetent and inadmissible testimony. While the burden was on the petitioner he made no effort to support this statement by competent evidence from the eye specialist though the latter was on the stand more than once. It is clear that the Associate Legal Member's decree as to present incapacity must have been based solely on this incompetent testimony. If supported by medical testimony it might have been sufficient to sustain the decree, but not only is it hearsay, and even though held competent because admitted without objection, yet without medical support by the petitioner when it could have readily been furnished, if such were the fact, the conclusion that his prostate trouble arose from such a cause is not a reasonable deduction and is insufficient to support that part of the decree which granted compensation long after the time had expired when he was entitled to compensation for the eye trouble.

It will be observed that the accident was on December 20, 1926, the hearing was June 21, 1927. The petitioner himself testified that so far as his eye was concerned he could have gone back to work in

about a month after the injury and that his disability to work at the time of the hearing was due to his prostate trouble. Dr. Moulton, the eye specialist, also testified that in two weeks after January 21st he could have attended horses. This statement was made in answer to a question as to how long the petitioner was incapacitated because of the injury to the eye as distinguished from his prostate trouble. Unless the prostate trouble can be traced to the trouble caused by the switching of the horse's tail his incapacity to do the labor he was doing at the time he was injured ended long before the hearing and his right to compensation under this petition ceased then. It is therefore plain that the case must be sent back to determine the amount of his compensation due to the injury of the eye.

*So ordered.*