## LEWIS v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 5362.   Decided April 10, 1933.   (20 P. [2d] 870.)

*P. G. Ellis* and *J. H. McKnight*, both of Salt Lake City, for plaintiff.

*Joseph Chez*, Attorney General, and *Cheney Jensen & Marr* and *Cleon Wilkins*, all of Salt Lake City, for defendants.

STRAUP, Chief Justice.

This a review of proceedings before the Industrial Commission wherein Lewis, the applicant, sought compensation from the Salt Lake City board of education for injuries, a double inguinal hernia, alleged to have been sustained by him in the course of his employment. The commission found that the hernia from which the applicant was suffering was

of long standing and was not occasioned nor aggrevated by an accident as claimed by the applicant, and thus denied him compensation, from which ruling the applicant has prosecuted this review.

Lewis, a painter and calciminer, was employed by the board July 12, 1932, and with a crew of three employees was engaged in calcimining rooms of a junior high school in Salt Lake City. Prior to that the applicant for some time had been out of work. He was put to work as one of the unemployed. In prosecuting the work planks were placed on "horses" or "tillies" upon which the workmen stood in calcimining the walls and ceiling of the room. According to the applicant's testimony, he, on July 15, in lifting or placing or replacing a plank, slipped and struck his "shin" against a desk; that he had hold of one end of the plank and a fellow workman of the other end when the end held by the applicant fell out of his hands and he reached over and again got hold of it. He testified that a minute or two afterwards and while he was spreading a drop cloth on the floor, he felt a severe and burning pain and on rising up, stated to his fellow workmen that he thought he "had appendicitis but it's on the wrong side." He testified he did not fall nor strike his groin or any part of his body against anything, except his "shin" against a desk and knocked a little skin off the shin. His fellow workmen testified that about ten or fifteen minutes after the planks were placed on the "tillies" they saw the applicant spreading the drop cloth when he "straightened up and said, 'I have a pain' "; that he believed he had appendicitis but that it was on the wrong side; and that he would have to go to the hospital. One or two of the workmen at the request of the applicant felt his side and found a lump about an inch high, one of them stating at the time that it was a rupture. The workmen testified they did not see the applicant slip or fall and that he made no outcry nor any statement of pain until he straightened up after spreading the drop cloth. The foreman and one of the workmen testified that when they felt

the lump the applicant stated that he had been operated on "for hernia but not for a rupture." The applicant by his testimony denied making any such statement and testified that what he told the foreman and the workmen was that he had been operated on for piles. The applicant further testified that prior to his claimed injury he was not and never had been afflicted with hernia and that he had had ten or twelve physicial examinations "for insurance, fraternal orders, railroads, and in the government service," and that the last examination was "a number of years ago." Another witness testified that he had intimately known the applicant for fifteen or twenty years, that he had worked with him, and that the applicant had always been a hard worker and did heavy work, and that the witness had not known that the applicant at any time was afflicted with hernia or that he otherwise was afflicted with or suffered from any ailment whatever.

The applicant continued with his work the remaining part of the day. The next morning he returned for work but complained of pain, whereupon the foreman sent him to a physician and surgeon, who made an examination of the applicant. The physician testified he found the applicant had a double hernia, one on the left and the other on the right side; that from the examination he was unable to determine, and stated no one from an examination could determine, whether the hernias were of recent or old origin; but further testified that the applicant having "both a complete and an indirect hernia on the right side, and also on the left, which is presumptive evidence that the hernias were both old and not new," for the reason, as he stated, that he "had never seen a double inguinal hernia produced by any accident." The doctor further testified the applicant told him he was "carrying a plank and laid the plank down or that the plank fell out of his hands and he felt a strain there and complained of pain in his side." The doctor was further asked whether in his opinion if a man was lifting a plank and slipped and the hernia suddenly resulted on the

right side, whether he would be in pain and cry out, to which the doctor answered, "Sometimes the first evidence of hernia is pain." Then the doctor was asked if it was possible for a man lifting some object and straining himself in such a way that a hernia would result whether that would pain him a minute, or five or ten minutes later, to which the doctor answered, "yes, he may not have noticed it at the time," but "he would have the pain later." The doctor further testified that while he could not tell whether the hernia was old or recent, yet in his opinion the hernia had existed longer than three or four days, and that it was his opinion that Lewis had these hernias both on the right and on the left side, "whether he knew it or not I don't know, but to produce a double inguinal hernia all at once, that does not occur." Upon a hypotheticial question with the usual loquacity, and upon the assumption that the applicant "in some manner slipped and fell on the desk and injured his shin," that in about ten or fifteen minutes or less the applicant experienced "intense burning on the right side," that the next day on an examination by a physician the applicant was found to have "a complete bilaternal inguinal hernia," and on the further assumption that "the applicant told the truth" (that prior to his slipping he had no hernia and that the double hernia was due to his slipping while lifting a plank), the doctor was asked "what is your opinion in case he had a pre-existing weakness both on the left and right side whether *this particular accident was of sufficient severity* to aggravate this pre-existing condition?" To which the doctor, with the usual lucidity of expert testimony "of things hoped for but not seen," answered: "Why, yes. There is no doubt about that." The applicant continued with his work until July 23, during which time he, as he testified, worked under difficulties and with much pain. As testified to by the foreman, the applicant, on July 23, was laid off to make room for another unemployed.

The foregoing is a substance of the evidence bearing on the particular question of whether the hernias were attri-

butable to the claimed accident of the applicant slipping and straining himself in lifting or placing a plank as testified to by him. That the applicant was sufferng from a double hernia is clear enough. That he, when employed by the board, was not so afflicted, and that the hernias were the result of or attributable to the claimed accident, are on the record matters concerning which reasonable minds may well differ, at least are not such as on the record demand a finding in favor of the applicant. Indeed, had the commission made a finding that the hernias were attributable to the claimed accident and made an award of compensation, it is extremely doubtful whether such an award on the record could be upheld, for the reason that on the record it is highly improbable that a double inguinal hernia on each side of the applicant's groin could or did result in the manner and from the cause testified to by the applicant.

The order denying compensation is affirmed.

ELIAS HANSEN, FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.