JOSEPH L. GEORGE *vs.* LAMSON OIL CORPORATION.

MARCH 15, 1943.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

82

CAPOTOSTO, J. This is a petition under the workmen's compensation act to recover compensation for partial permanent disability resulting from an occupational disease, namely, a hernia—G. L. 1938, chap. 300, art. VIII, § § 2, 27 —which the petitioner claims to have suffered, on May 12, 1939, while in the course of his employment by the respondent in his usual occupation as a warehouseman. After a hearing in the superior court a justice thereof found that petitioner's hernia was not "clearly recent in origin", as the statute requires, and entered a decree denying and dismissing the petition. From the entry of this decree the petitioner appealed, claiming that such finding is not supported by legal evidence.

The sole question before us, therefore, is whether there is legal evidence to support the finding of the trial justice. If such finding is based on legal evidence, it is conclusive upon us, under the provisions of the workmen's compensation act,

in the absence of fraud. No question of fraud being raised in this cause, we are precluded from weighing the evidence and from passing on the credibility of the witnesses.

It appears in evidence that the plaintiff worked as a warehouseman for the respondent or its predecessor for over twenty-one years, and that during all this time his usual occupation required him, among other still heavier duties, to load and unload from a platform to a truck, or vice versa, cases of oil weighing fifty or one hundred and ten pounds. The floor of the truck was some eighteen inches higher than the platform. The petitioner testified that on May 12, 1939, while stepping up from the platform to the truck with a fifty-pound case of oil in his arms, he felt a sharp pain in his left groin; that when he went home and examined himself he found a lump at that place on his body; that a few days later he consulted Dr. Gustave Pozzi, who told him that he had a hernia and should be operated upon; that, notwithstanding such diagnosis and advice, he continued to perform his usual duties until April 6, 1940, when he quit work, at which time the respondent paid him for two extra weeks. The petition now before us was filed with the director of labor on December 23, 1940. In cross-examination the petitioner denied that he had a hernia before May 12, 1939, or that he told certain fellow employees that he was suffering from such an ailment in January 1938, or shortly thereafter.

Doctor Pozzi testified that he gave the petitioner a complete physical examination about a year before May 16, 1939; that he then found no hernia; that when he examined him on the latter date, the petitioner had a left inguinal hernia; that he next saw him on April 9, 12, 20, 1940, and February 21, 1941, at all of which times the same hernia was present in a more aggravated form; that petitioner's work was a "competent producing cause of the condition" which he found on May 16, 1939; and that such condition incapacitated the petitioner from doing heavy work, unless he submitted to an operation. As to whether the petitioner's hernia was of recent origin, the doctor's entire testimony on

the point is as follows: "Q. And did you make an examination of Mr. George at that time? (May 16, 1939) A. I did. . . . Q. And from your examination could you determine whether this hernia was of recent origin? Mr. Gunning: Answer yes or no, if the Court please. A. Yes." The doctor was not asked nor did he at any time say in the course of his testimony that, in his opinion, the hernia *was* of recent origin.

Among respondent's witnesses were Edward Springer, Arthur Desgranges and Dr. Joseph C. Johnston. In January 1938, Springer was employed as route clerk and director of the warehouse where the petitioner worked. He positively testified that in that month and year the petitioner first mentioned that he had a hernia, and that thereafter he always complained of such condition whenever he had to do heavy lifting. This witness was asked: "Q. What would he say? A. Well, he said his rupture would bother him."

The substance of Arthur Desgranges's testimony is that he worked with the petitioner as a warehouseman for a number of years prior to January 1938; that when the respondent took over the business from Richfield he left the warehouse to work as a truck driver; and that at different times during "about four years" *before* he "quit the warehouse in January 1938" the petitioner "complained that he had a hernia."

Doctor Johnston, who examined the petitioner on May 23, 1941, testified that the petitioner had a "direct-indirect inguinal hernia." In answer to a hypothetical question in direct examination he said that his "findings could be consistent with the possibility of a hernia being present previous to 1939." In cross-examination he testified as follows: "From your examination could you state with any definite degree of certainty about when the hernia took place? A. You mean pin myself down to a date? Q. Yes. A. No. But I know it has been present for a long period of time. Q. But you couldn't tell within a year or two? A. Oh, I think it is more than a year or two. I would say to the minimum three

or four years." We note here that Dr. Johnston testified on May 27, 1941.

General laws 1938, chap. 300, art. VIII, § 2, provides that: "The disablement of an employee resulting from an occupational disease or condition described in the following schedule shall be treated as the happening of a personal injury by accident . . . . 27. Hernia, clearly recent in origin and resulting from a strain, arising out of and in the course of employment and promptly reported to the employer."

The petitioner contends that there is no legal evidence of probative value to support the finding of the trial justice that the hernia was not clearly of recent origin. He argues that there is no direct evidence that the petitioner had a hernia prior to 1939. "The petitioner did not know that he had a hernia until the doctor told him so." Because he is not quoted by Springer and Desgranges as saying, prior to 1939, that a doctor told him he had a hernia, he urges that the testimony of these witnesses and that of Dr. Johnston was not competent legal evidence, as the "whole ground work of respondent's proof about the existence of a hernia in 1939 is very, very shallow."

We cannot agree with the petitioner. The testimony of Springer, Desgranges and Dr. Johnston was competent legal evidence, which the trial justice had a right to consider in connection with all the other evidence and the reasonable inferences therefrom in the cause. Petitioner's contention before us goes to the weight of the evidence and to the credibility of the witnesses, both of which questions were for the trial justice alone to determine, rather than to the competency of the questioned testimony as legal evidence. It was incumbent on the petitioner to establish that the hernia was clearly of recent origin, and this he failed to do in the opinion of the trial justice. Since we find competent legal evidence to support this finding, we are powerless to interfere. The cases of Condon v. First National Stores, Inc., 65 R. I. 129, and LaPoint v. Pendleton, T. T., 61 R. I. 121, to which the

petitioner refers, are clearly distinguishable from and inapplicable to the circumstances in the instant cause.

The petitioner's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Ralph M. Greenlaw, Edwin B. Tetlow, Edwin J. Tetlow,* for complainant.

*William A. Gunning,* for respondent.