## BETHLEHEM STEEL COMPANY *v.* HELENA A. ZIEGENFUSS

[No. 20, October Term, 1946.]

284

*Decided November 20, 1946.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, and HENDERSON, JJ.

*Jesse Slingluff, Jr.*, and *Edward G. Howard*, with whom were *Kenneth C. Proctor* and *Marbury, Miller & Evans* on the brief, for the appellant.

*William Taft Feldman*, with whom was *I. Duke Avnet* on the brief, for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

Appellee filed her claim against appellant, her employer and a self-insurer, with the State Industrial Accident Commission, asking compensation for the result of an accidental injury occurring September 19, 1944. Her work was the operation of a crane. On the day of the accident she had descended from the crane and, returning, climbed a ladder, on the rungs of which there was grease. She slipped, but did not fall. She continued to work that day, but the next morning her right side commence to pain her and started to swell. She was off three days. When she went back she reported to her foreman and the Mill Dispensary. A couple of weeks later she went to the Mill Dispensary and was directed to Dr. Shaffer. Dr. Shaffer told her she had a hernia. She asked him for an operation. He denied responsibility on behalf of the company. She then arranged for the operation herself and it was performed on November 20th. She was not working from November 12, 1944, to March 5, 1945. The State Industrial Accident Commission denied compensation on the ground that she did not prove she had no pre-existing hernia. On appeal to the Circuit Court for Baltimore County the jury decided the issues presented in her favor and a judgment was entered reversing the order of the Commission. The employer and self-insurer then took this appeal.

Three questions are raised on the record. These are:

1. Whether the claimant produced legally sufficient evidence to show that the hernia complained of did not exist prior to the accident.

2. Was the employer-insurer entitled to his fifth issue refused by the court which was, "Had the claimant a hernia existing prior to the time of the alleged accident?"

3. Did the claimant's first issue submit to the jury a question of law? This issue was, "Did the claimant sustain a compensable hernia arising out of and in the course of her employment," etc.

Cases involving hernia constitute an exception to the usual type of cases under the Workmen's Compensation Act. Code, 1939, Art. 101, Sec. 1, *et seq.*, as amended. This was not always so. When compensation acts were first passed a hernia was treated in the same manner as any other injury. If it appeared from the testimony that there was any special strain or slip or fall, or any other occurrence out of the ordinary which produced a hernia, then it was compensable as were other injuries. One of the earlier cases decided in 1920 illustrates this, although there was no dispute that the hernia in the case came about as a result of lifting in a course of the claimant's employment. He filed a claim for compensation and his employer was ordered to pay him for eight weeks. He had refused to submit to an operation, and the court held, following what was stated to be the overwhelming weight of authority, that a claimant cannot continue to receive compensation and at the same time refuse to submit to proper surgical treatment such as any reasonable man would submit to in like circumstances. That was the case of *Schiller v. B. & O. Railroad Co.,* 137 Md. 235, 112 A. 272. The injury in that case occurred on the 21st of December, 1917, and was held compensable under the Acts of 1916, Chapters 368 and 597, then in force. These were amendments to the original enforcible compensation act, Chapter 800 of the Acts of 1914. In none of these acts was there any special provision for hernia.

The next amendment came in 1920 by Chapter 456, which also provided no special treatment for hernia cases. Between 1920 and 1931 occurred the case of *Atlantic Coast Shipping Co. v. Stasiak,* 158 Md. 349, 148 A. 452,

in which a stevedore developed a hernia while loading tin plate on trucks. The court said that the injury did not result from any external force and there was nothing in the record to indicate any unusual strain or any condition not incidental to the work in which he was engaged. It was held that under these circumstances the injury was not an accidental injury within the meaning of the compensation law. This same ruling was made in the case of *Jackson v. Ferree,* 173 Md. 400, 196 A. 107, but was differentiated in the cases of *Waddell George's Creek Coal Co. v. Chisholm,* 163 Md. 49, 161 A. 276, and *Baking Co. v. Wickham,* 178 Md. 381, 13 A. 2d 771. In the last case, it was held there was sufficient evidence to enable a jury to conclude that the accident either accelerated an existing rupture or caused a strangulated hernia. This last case was decided under the Act of 1937, Chapter 329, which contained the same provisions as those in force when the case before us arose.

The first special statutory treatment of hernia is found in Chapter 363 of the Acts of 1931. It was there provided that claims for compensation for hernia should be allowed only upon definite proof of six separate conditions. First, there had to be an accidental injury caused by and arising out of and in the course of the employee's employment; second, the hernia had to appear suddenly; third, it must be accompanied by pain; fourth, it must immediately follow such injury; fifth, it must not have existed prior to the injury; and, sixth, the injury must have been reported to the employer within 48 hours next following its occurrence. It was also provided that all hernias should be treated in a surgical manner by operation whenever practicable. In case the employee refused to undergo an operation he was to be allowed compensation for seven and one-half weeks, but if, because of age and previous physical condition, it was unwise for him to undergo such operation, the refusal might be excused by the Commission and the employee would then be allowed compensation for the period of actual disability, not to exceed 26 weeks. These

provisions of the statute were considered by this Court in the case of *Lloyd v. Webster,* 165 Md. 574, 169 A. 202, and the reasons for their enactment were given in the opinion delivered for the Court by Chief Judge Bond in the following words: "These special requirements in the Maryland statute are similar to those previously adopted in a number of other States to gain greater assurance that hernias compensated for have in fact resulted from accidental strains. The general provisions of the compensation statutes, it appears, had seemed to work unsatisfactorily because previous accidental strains were sometimes inferred merely from the development of the hernias, when no strains had been reported or known. Occurrence of a strain would, of course, be a fact peculiarly within the knowledge of the workman, and there could be no means of testing the truth of attribution of the hernia to strains if no strains had been reported at the time. Further, medical testimony had cast considerable doubt on the possibility of traumatic cause of hernias." The Court's construction of the statute is also stated by Judge Bond, "This Court construes the Maryland statute as intended to restrict compensation for hernia to accidents noticed and reported at or about the time of their occurrence. Throughout the requirements quoted, the accidental injury from which the time for reporting is to run is distinguished from the hernia attributed to it. There must have been 'an accidental injury causing hernia.' the hernia must have followed the injury immediately, * * * which must have been reported to the employer within the time stated after its occurrence." In the April term of 1935 this Court decided the *Ross v. Smith* case, 169 Md. 86, 179 A. 173. In that case the employee had an old hernia, was injured, and, as a result, had a strangulated hernia, and the Court said that the old hernia was not the hernia for which compensation was claimed. It was held that the Act of 1931, Chapter 363, was no bar to the claim under these circumstances and that while there was no basis for the determination of the proportionate disability at-

tributed to an old hernia and to the later strangulated hernia, the latter caused the employee's death. The implication is that had there been merely a disability and not a death the disability could have been proportioned, under the Act of 1931.

Meanwhile the Legislature of 1935 had passed an Act which went into effect after this decision and which changed the requirements of compensation for hernia. This was Chapter 487 of the Acts of 1935 and its provisions in this respect have continued since, although there was a change by Chapter 336 of the Acts of 1945 which permitted compensation for hernia resulting from strain. This last Act, however, is not before us in this case.

The Act of 1935, reaffirmed by the Act of 1937, Chapter 329, Code, 1939, Art. 101, Sec. 48, and the Act of 1941, Chapter 626, and the Act of 1943, Chapter 478, Code, Supp. 1943, Art. 101, Sec. 48, reduces the requirements for compensation for hernia to three: First, that there was an accidental injury causing hernia, arising out of and in the course of employment; second, that the hernia did not exist prior to the injury for which compensation is claimed, with a proviso if a pre-existing hernia became strangulated, requiring immediate operation, this requirement would not apply; and, third, that the injury must be reported to the employer within 10 days next following its occurrence. The provisions of this last statute lessened the burden placed upon the claimant, and gave him more time to make a report, but the requirement is still included that "definite proof" must be offered that the hernia did not exist prior to the injury. Under this statute the Court thinks that in a case such as the present one, in which there is no question of the strangulation of a pre-existing hernia, it is incumbent upon the claimant to prove that she had no pre-existing hernia. Since that is so, it follows that the employer-insurer was entitled to an issue, directed specifically to this question. That is the purpose of the fifth issue which was refused by the court below. It is contended on behalf of the appellee that the employer-

insurer's first issue covered this question because it required the jury to find whether the claimant sustained an accidental injury causing a hernia arising out of and in the course of her employment. This last issue does logically include the question raised by the rejected fifth issue, but in view of the special treatment of the matter by the statute, we think the employer-insurer was entitled to have the point specifically brought to the attention of the jury by the granting of a separate issue. This was the second question presented by the record.

We are also in accord with the appellant in its view of the claimant's first issue which, as we have already stated, asks whether the claimant sustained "a compensable hernia." This requires the jury to determine a question of law; that is, what is a compensable hernia. The issue might be rendered harmless by appropriate instructions as to what a compensable hernia is, but we think it better practice not to include in an issue of fact to be submitted to the jury words which might lead the jury to conclude that it could determine what injuries were compensable and what were not. This Court has several times stated that the province of a jury in the type of appeal permitted by our Workmen's Compensation Law is to find facts. *Schiller v. Baltimore & Ohio Railroad, supra; Townsend v. Bethlehem-Fairfield Shipyard,* 186 Md. 406, 47 A. 2d 365. Then based upon the facts found, the award will be made by the Commission.

Our view of these rulings would result in a reversal of the judgment, and a remand of the case for a new trial. There is, however, a more serious question raised by the appellant's first contention. That is whether the appellee offered any legally sufficient evidence to show, as she is required to show by the statute, that she did not have a pre-existing hernia.

The only evidence offered on her behalf is her own. She states that when she got home the evening of the accident she had a swelling in her side with quite a bit of pain, and that it was the first time she had had a swelling *of that size.* However, about 20 years before the

accident, she had an appendix operation, and then, in October, 1943, about a year before the accident, she had an adhesion operation. Following this, in January, 1944, she was given an examination by Dr. Collins, who was a physician for the appellant. He examined the area that had been operated on and, according to her testimony, "He said I had a small place about two inches from the incision and he said it was nothing but an expanded muscle and it would go away and nothing to worry about." She said the doctor did not tell her that she had a hernia, and her side remained the same until the time of the accident. She further testified that before she slipped on the ladder the lump was about an inch in diameter. She denied that she had ever stated to the Church Home and Infirmary, where she was operated on for adhesions in November, 1944, that the lump had progressively gotten larger, but said that she did say that she had a small lump there before, because she had. Dr. Collins was not produced, but Dr. Nevy, who was a personal physician of the appellee, was called by the appellant, and he said that in the early part of 1944, after the adhesion operation, she developed a hernia which he believed to be caused by the operation. He testified on cross-examination that it was possible to have a relaxed muscle without having a hernia, that a relaxed muscle would cause some swelling, and that he thought it was common for doctors to disagree in their diagnosis whether or not a person has a hernia. He, however, repeated on cross-examination his opinion that she had a hernia following the operation. Dr. Shaffer, who is on the staff of the Bethlehem Steel Company Hospital, and examined her after the hernia developed, said that in his opinion it existed prior to September, 1944. He also testified on cross-examination that it was possible to have an expanded condition of a relaxed muscle and still not have a hernia.

Hearsay statements are admissible to some extent in compensation cases, although this Court has said discrimination is required as to which should be admitted,

and that some hearsay must be excluded. Code, Art. 101, Sec. 10; *Standard Oil Company v. Mealey,* 147 Md. 249, 127 A. 850; *Waddell George's Creek Coal Co. v. Chisholm,* 163 Md. 49, 161 A. 276; *Horn Ice Cream Co. v. Yost,* 164 Md. 24, 163 A. 823; *Spence v. Steel Co.,* 173 Md. 539, 197 A. 302. The common form of hearsay in compensation cases is testimony what the injured person told someone else about his condition. Here, the testimony is what a physician told the claimant and the question is whether this, standing alone, is sufficient to take the case to the jury.

In the case of *George v. Lamson Oil Co.,* 69 R. I. 81, 30 A. 2d 856, one physician testified that he examined the claimant a year before the accident and found no evidence of hernia. Another who made an examination a year after a hernia operation brought about by the accident stated that in his opinion claimant had a hernia for three or four years at the minimum. Fellow workers testified that a year before the accident claimant had said that his "hernia" or "rupture" was bothering him, and one man asserted that these statements had been made at irregular intervals during a four-year period before the accident. The court permitted this hearsay testimony as to what the claimant himself had said, even though he did not state that a doctor had told him he had a hernia. This, of course, was testimony against the claimant, who was denied an award. In the case of *Stearns Coal & Lumber Co. v. Duncan,* 258 Ky. 346, 80 S. W. 2d 4, lay witnesses were permitted to testify that before the accident they saw no protrusion although they had opportunity to do so, and the claimant's mother was permitted to testify that there was no hernia history in his childhood. The court said that a statute requiring proof of no pre-existing hernia was satisfied by this evidence.

In *Black Mountain Corp. v. Dean,* 275 Ky. 121, 120 S. W. 2d 1030, a physician, who operated on claimant for hernia, testified that in his opinion it was congenital and did not result from the accident. Other physicians

testified that the length of duration could not be determined by the appearance of adhesions, and expressed the opinion that the hernia was traumatic. The court upheld the findings of the Compensation Board allowing the claimant compensation, because there was evidence tending to show that he was injured in an accident; that the hernia occurred suddenly, immediately following the injury, and that it did not exist in any degree prior to the injury. This last finding was based on the testimony of lay witnesses, and the opinion of two physicians.

In a case of total disablement, under a war risk insurance policy, the claimant testified as to the examination of a number of physicians in different hospitals. These finally culminated in one by a doctor in a hospital in Phoenix, Arizona, when, according to the witness, a diagnosis of pulmonary tuberculosis was made. The Circuit Court of Appeals for the Ninth Circuit held that his evidence as to the statements by the physicians at Phoenix was clearly hearsay and should have been stricken and reversed a judgment in his favor. *United States v. Hill,* 61 F. 2d 651. See also *United States v. Buck,* 5 Cir., 70 F. 2d 1007, to the same effect. A material finding, based entirely upon hearsay testimony of lay witnesses as to what doctors said, was held insufficient to support an award in *Pacific Employers Insurance Co. v. Industrial Accident Commission,* 47 Cal. App. 2d. 494, 118 P. 2d 334. Medical opinion was held indispensable in *Lumbermen's Mutual Casualty Co. v. Industrial Accident Commission,* Cal. App., 168 P. 2d. 979. In *Burgesss v. American Safe Deposit Co.,* 19 La. App. 443, 140 So. 103, 104, two friends of the claimant testified that immediately after the accident the hernia was apparent even to an inexperienced eye. There was medical testimony that the doctor who examined him after the accident did not see the hernia, and would have noticed it had it been there at the time. The court said that in determining whether hernia actually resulted from accident or from congenital weakness, it would not substitute its con-

jectural judgment for the "preponderating medical opinion." This case was followed in two other Louisiana cases, *Turner v. New Orleans Ice Cream Co.*, La. App., 154 So. 773, and *Doane v. Board of Commissioners*, La. App., 163 So. 717. See also *Frugia v. Calcasien Oil Co.*, La. App., 152 So. 131, and *Lewis v. Industrial Commission*, 81 Utah 568, 20 P. 2d 870, where it was held that claimant's testimony alone to the effect that he had no pre-existing hernia, would not be accepted in place of more convincing testimony that the hernia was one of long standing. In *Strout's Case*, 126 Me. 577, 140 A. 377, the claimant testified that a physician said that his prostate condition was due to his lying around the hospital while being treated for an accidental injury to his eye. The court said that if this had been supported by medical testimony it might have been sufficient, but that it was not only hearsay, but was without medical support by the claimant when this could readily have been furnished. It was held to be insufficient to support that part of the decree which granted compensation after the time had expired when the claimant was entitled to compensation for his eye trouble.

It is not necessary that there should be medical testimony as to the cause of the injury in order to take the case to the jury. If there are facts shown which logically tend to show that an accident caused the condition complained of, such facts can be proved by lay witnesses. *Neeld Construction Co. v. Mason*, 157 Md. 571, 146 A. 748; *Celanese Corp. v. Lease*, 162 Md. 587, 160 A. 801; *Baber v. John C. Knipp & Sons*, 164 Md. 55, 163 A. 862; *Harrington's Case*, 285 Mass. 69, 188 N. E. 499. However, in the case before us we have a somewhat different situation. We are not passing upon the question whether lay testimony to the effect that a claimant had no protuberance before the accident and had such protuberance immediately following would be sufficient to take the case to the jury in spite of competent medical testimony that the claimant had congenital hernia. We have here appellee's testimony that she had a lump in her side

before the accident, and that this lump immediately grew larger after the accident and was a hernia although it never became strangulated. Having so testified, it became necessary for her to show, under the statute, that this lump in her side, existing before the accident, was not a hernia. She produced no direct medical testimony to this effect, but attempted to prove it by her own testimony of what was told her by the appellant's doctor who was examining her for a return to work after her adhesions operation. She does not say that he told her in so many words that the lump in her side was not a hernia, but, by implication, it could be assumed his characterization of it as an expanded muscle negatived the idea that he thought it was a hernia. Giving the appellee the full benefit of this assumption, her case on the point of no pre-existing hernia, in which she has the burden of proof, rests entirely upon hearsay. We do not think the relaxation of the ordinary rules of evidence provided for by the Code in compensation cases was intended to go to the extent of permitting a claimant to sustain a burden of proof by her statement of what a doctor told her. The reason for the rule permitting hearsay in compensation cases is that it was supposed that the majority of cases would be presented by workmen of little education without the benefit of legal assistance, and that the imposition of the usual rules of evidence would work hardships in many cases. By the same reasoning, the unsupported testimony of people of no medical education as to medical opinions given them does not meet the statutory requirement of definite proof.

For these reasons we conclude that there was no legally sufficient evidence presented, that appellee had no pre-existing hernia. It follows that appellant's motion for a directed verdict on this point should have been granted.

The judgment will be reversed and the case remanded with instructions to enter a judgment affirming the finding of the State Industrial Accident Commission.

*Judgment reversed, with costs, and case remanded.*