*United Parcel Service, et al. v. Strothers*
No. 743, Sept. Term 2020
Opinion by Shaw, J.

**Workers' Compensation – Proceeding to Secure Compensation – Review by Court – Scope and Extent of Review in General**

The Workers' Compensation statute does not expressly or implicitly equate definite proof with any standard of proof.

**Workers' Compensation – Proceeding to Secure Compensation – Review by Court – Scope and Extent of Review in General – Presumptions and Burden**

The term "definite proof" is proof that is certain, not ambiguous, obscure, or speculative and it refers to the type of evidence needed to sustain a claim. The term was included in the statute in response to the need to ensure that compensation for hernias is based on testimony and evidence, most often medical evidence, that substantiates a worker's claim.

**Workers' Compensation – Proceeding to Secure Compensation – Review by Court – Scope and Extent of Review in General – Presumptions and Burden**

The language of the Workers' Compensation statute is clear, the term "definite proof" refers to the quality of evidence and does not constitute a standard of proof, nor does its inclusion in the statute require the heightened burden of the clear and convincing standard.

Circuit Court for Howard County
Case No. C-13-CV-20-000370

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 0743

September Term, 2020

UNITED PARCEL SERVICE, ET AL.

v.

DAVID STROTHERS

Arthur,
Shaw,
Harrell, Glenn T., Jr.
  (Senior Judge, Specially Assigned),

JJ.

Opinion by Shaw, J.

Filed: February 4, 2022

 Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This appeal arises from an order of the Circuit Court for Howard County, affirming the March 9, 2020 decision of the Maryland Workers' Compensation Commission. Appellee, David Strothers, filed a claim against appellants, United Parcel Service ("UPS") and Liberty Mutual Insurance ("LMI"), seeking compensation after he developed a hernia during the course of his employment. The Commission found that appellee sustained a compensable accidental injury arising out of and in the course of his employment; that the hernia was the result of the aforesaid accidental injury; and that appellee was temporarily totally disabled from September 20, 2019, to January 21, 2020.

Appellants then filed a Request for Rehearing with the Commission, which was denied. Following an "on-the-record" judicial review hearing on August 27, 2020, the circuit court judge affirmed the Commission's decision. Appellants timely appealed and present the following questions for our review:

1. Did the circuit court and Maryland Workers' Compensation Commission err in applying a preponderance of the evidence standard to the "definite proof" standard required by §9-504?

2. Did the circuit court and the Maryland Workers' Compensation Commission err in the finding that the appellee met the evidentiary standard of "definite proof" when he provided opinions that only constituted a preponderance of the evidence standard?

3. If, *arguendo*, the appellee did satisfy the standard of "definite proof," did the circuit court and Maryland Workers' Compensation Commission err in finding that the hernia operation took place "immediately," as required by §9-504?

For reasons discussed below, we conclude there was no error, and we affirm.

**BACKGROUND**

On September 17, 2019, appellee, during the course of his employment with UPS, sustained a hernia[1] injury, while using a power jack to move a load of pallets. Following the injury, appellee went to Howard County General Hospital with complaints of right-side abdominal pain and nausea. He reported a history of hernias and surgeries and stated that he had two prior hernias. The first hernias were a left inguinal[2] and umbilical hernia[3] due to a work-related injury with UPS that occurred on May 12, 2016. The second was a non-work-related right-side lateral[4] hernia that occurred over twenty years ago. Both required surgical repair. During appellee's emergency room visit, he was diagnosed with a 3.3 cm

---

[1] "A hernia occurs when there is a protrusion of tissue through an abnormal opening of the body. Although they most commonly occur in the groin, they may occur in other areas of the body as well." *Greer v. Montgomery Cnty*, 246 Md. App. 245, 247 (2020) (quoting Clifford B. Sobin, 1 Maryland Workers' Compensation § 5.3, at 141 (2018) (footnote omitted)).

[2] "Inguinal hernia" is the medical term for a hernia that occurs in the groin area. *Inguinal Hernia*, Cleveland Clinic, https://my.clevelandclinic.org/health/diseases/16266-inguinal-hernia (last visited August 31, 2021) ("A hernia is a common condition that occurs when a part of an internal organ or tissue bulges through a muscle. An inguinal hernia occurs when the intestines or fat from the abdomen bulge through the lower abdominal wall into the inguinal, or groin, area."). *Greer*, 246 Md. App. at 248.

[3] "Umbilical Hernia" is the medical term for a hernia that occurs in the abdomen near the navel (belly button) area. *Umbilical Hernia*, Cleveland Clinic, https://my.clevelandclinic.org/health/treatments/6241-umbilical-hernia-srgery-for-children (last visited August 31, 2021) ("An umbilical hernia is an unusual bulge that you can often see or feel over the belly button (the umbilicus). An umbilical hernia develops when part of the intestine, together with fat or fluid, forms a sac. This sac pushes through an opening in the muscle of the abdominal wall.").

[4] A "lateral hernia" is also known as an "inguinal hernia." *Lateral Hernia*, Taber's Cyclopedic Medical Dictionary (22nd ed. 2013), *supra* n.2.

right-side paraumbilical hernia that appeared slightly increased in size when compared to a past study performed on May 14, 2016. It was recommended that he follow up with his primary care physician and/or a general surgeon within 7 days.

Appellee filed a First Report of Injury or Illness with his employer the next day. On September 23, 2019, appellee went to Columbia Medical Practice where he was diagnosed and recommended for surgery. The surgery was scheduled for September 30, 2019. Appellants, however, contested the injury and did not authorize the surgery or request that appellee be evaluated by an independent physician of their choice. As a result, the surgery was cancelled. Appellee then tried several alternatives for surgical authorization, but he was unsuccessful. Appellee met with Dr. Alan Kravitz on September 27, 2019 for further assessment, and he performed the hernia repair on November 14, 2019. An evaluation was conducted by Dr. Robert Macht on January 15, 2020. In his report, Dr. Macht opined to a reasonable degree of medical probability that appellee "developed a new onset of an umbilical hernia at the time of his accident," and he underwent "urgent surgery" due to the umbilical hernia.

The Workers' Compensation Commission held a hearing on the contested issues of accidental injury and causal relationship of the umbilical hernia in February 2020. Approximately one month later, the Commission issued its findings, stating:

> The Commission finds on the issues presented that the claimant sustained an accidental injury arising out of and in the course of employment on September 17, 2019, that the disability of the claimant's hernia is the result of aforesaid accidental injury, and that as a result thereof the claimant was temporarily totally disabled from September 20, 2019 to January 21, 2020 inclusive. The Commissioner finds that the employer and insurer shall authorize surgical repair of the claimant's hernia. The Commission further finds that the employer and insurer shall pay causally related

3

medical expenses in accordance with the Medical Fee Guide of this Commission. The issue of nature and extent was raised but not litigated. Average weekly wage — $843.03.

Appellants then filed a Request for Rehearing, contending that the Commission's decision finding the hernia compensable was an error of law. Appellee, in response, submitted a letter to the Commission on March 24, 2020 with a medical report from his surgeon, Dr. Alan Kravitz, that stated the hernia was "more likely than not caused by the September 2019 injury." The Commission denied the request for a rehearing.

Appellants filed a timely petition for judicial review in the Howard County Circuit Court. On August 27, 2020, following an "on-the-record" hearing, the judge issued an order affirming the Commission's decision. Appellants timely filed this appeal.

## STANDARD OF REVIEW

Generally, in an appeal from judicial review of an agency action, this Court "review[s] the agency's decision directly, not the decision of the circuit court…." *Long v. Injured Workers' Ins. Fund*, 448 Md. 253, 264 (2016). Section 9-745(c) of the Maryland Labor and Employment Article provides that when an appeal is filed, the standard to be used by the court is limited to determining "whether the Commission: (1) justly considered all of the facts about the accidental personal injury, occupational disease, or compensable hernia; (2) exceeded the powers granted to it [by the Maryland Code]; or (3) misconstrued the law and facts applicable in the case decided." This Court "respect[s] the expertise of the agency and accord[s] deference to its interpretation of a statute that it administers; however, we may always determine whether the administrative agency made an error of law." *Id.* The Commission's decision is presumed to be prima facie correct. LE § 9-

4

745(b)(1). "That presumption does not extend to questions of law, which we review independently. We do, though afford the Commission a degree of deference, as appropriate, in its formal interpretations of the Workers' Compensation Act." *Id*.

## DISCUSSION

### I. The Commission did not err in applying a preponderance of the evidence standard in accordance with §9-504.

Appellants argue the Commission erred in applying the preponderance of the evidence standard to appellee's claim because the statute created a higher standard of proof for hernia cases. Appellants assert the term "definite proof," as used in the statute, requires analysis under the clear and convincing standard. Appellants contend that "if the legislature intended for 'definite proof' to mean 'preponderance of the evidence,' … the legislature would have used that well-known standard" in the statute. Because of this, appellants state that, as a matter of law, the Commission erred in finding that appellee suffered a compensable hernia. In opposition, appellee argues the Commission properly applied the preponderance of the evidence standard and liberally construed the statute, as was the intent of the legislature.

To determine whether the Commission erred in applying the preponderance of the evidence standard, this Court must first examine the language of Section 9-504 of the Labor and Employment Article. Where the statutory language is plain and free from ambiguity, we do not look "beyond the words of the statute itself to determine legislative intent." *Md. Ins. Admin. v. Md. Individual Practice Assn., Inc.*, 129 Md. App. 348, 355 (1999). Where the language of the statute is ambiguous, this Court must "consider … [the] meaning and

5

effect [of the language] in light of the setting, the objectives, and purpose of the enactment." *Id.* We "construe the statute as a whole and interpret each of its provisions in the context of the entire statutory scheme." *Id.*

The Maryland Workers' Compensation Act is a remedial statute, and "as a result, is generally interpreted liberally in favor of the claimant." *McLaughlin v. Gill Simpson Elec.*, 206 Md. App. 242, 253-54 (2012). While remedial statutes are "to be given a liberal construction, the predominant goal of the Court is to ascertain and implement the legislative intent, and the ascertainment of that intent is done, in the first instance, by considering the language used by the Legislature and giving that language a plain and common sense meaning." *1081 Arundel Corp. v. Marie*, 383 Md. 489, 502 (2004).

The Maryland Labor and Employment Article, Section 9-504 states:

[A]n employer shall provide compensation in accordance with this title to a covered employee for a hernia caused by an accidental personal injury or by a strain arising out of and in the course of employment if:

(1) the covered employee provides **definite proof** that satisfies the Commission that:
(i) the hernia did not exist before the accidental personal injury or strain occurred; or
(ii) as a result of the accidental personal injury or strain, a preexisting hernia has become so aggravated, incarcerated, or strangulated that an immediate operation is needed; and
(2) notwithstanding any other provision of this title about notice, the accidental personal injury or strain was reported to the employer within 45 days after its occurrence.

(emphasis added).

The term "definite proof" is distinct from language used for accidental injury claims under the Workers' Compensation Act and it is found solely in the section related to hernia

claims. No explanation of the term is provided in the statute. As discussed in appellants' brief, the term definite is defined by Merriam-Webster's Dictionary as "free of all ambiguity, uncertainty or obscurity, unquestionable, decided." *Definite*, Merriam-Webster Online Dictionary 2021. Black's Law Dictionary defines it as "a certain or exact boundary." *Definite*, Black's Law Dictionary (11th Ed. 2019). Proof is defined as "a sufficient reason for the truth of a juridical proposition by which a party seeks either to maintain his own claim or to defeat the claim of another." *Proof*, Black's Law Dictionary (11th Ed. 2019).

In our view, the plain language of the statute is clear and expresses a "simple meaning." *McLaughlin*, 206 Md. App. at 254. The term "definite proof" is proof that is certain, not ambiguous, obscure, or speculative and it refers to the type of evidence needed to sustain a claim. The statute does not expressly or implicitly equate definite proof with any standard of proof, and we found no statutory authority that specifies that "definite proof" is a substitute for the clear and convincing standard. We note that if the Maryland Legislature had wanted to heighten the standard of proof for hernia compensation, they would have done so expressly. *Greer*, 246 Md. App. at 253 (holding that if the legislature intended to cover a hernia as an occupational disease under the Act, they would not have created a separate section detailing the compensability of hernias).

In *Bethlehem Steel Co. v. Ziegenfuss*, the appellee filed a claim against her employer and self-insurer, asking for compensation for a hernia resulting from an accident while operating a crane at work. 187 Md. 283, 285 (1946). She was examined by a physician who diagnosed her with having a hernia and she requested surgery. *Id.* The doctor denied

responsibility on behalf of her employer, and she sought out another doctor, who performed the surgery. *Id.* Her compensation claim was initially denied because the Commission found she did not prove that she had no pre-existing hernia. *Id.* On appeal, the circuit court reversed the ruling and the employer appealed. *Id.*

In holding that the appellee failed to present any legally sufficient evidence to support her claim that she did not have a pre-existing hernia, the Court of Appeals referenced the term "definite proof." *Id.* at 295. The Court, while acknowledging that hearsay is permissible in compensation cases, stated:

> [A]ppellee produced no direct medical testimony …but attempted to prove it by her own testimony of what was told her by the appellant's doctor…. We do not think the relaxation of the ordinary rules of evidence provided for by the Code in compensation cases was intended to go to the extent of permitting a claimant to sustain a burden of proof by her statement of what a doctor told her.

*Id.* The Court then concluded that "the unsupported testimony of people of no medical education as to medical opinions given them does not meet the statutory requirement of definite proof." *Id.* Absent from the Court's holding was any language indicating that definite proof was a standard of proof or that the term referenced the clear and convincing standard. The Court's ruling merely pointed to the lack of certainty in proof.

Prior to 1931, a hernia claim was treated like any other injury and was compensable "[i]f it appeared from the testimony that there was any special strain or slip or fall, or any other occurrence out of the ordinary which produced the hernia…." *Bethlehem Steel Co.*, 187 Md. at 286; see *Atlantic Coast Shipping Co. v. Stasiak*, 158 Md. 349, 351(1930) (requiring evidence that hernias were caused by "any usual strain or by any condition incident to the claimant's employment").

The Maryland Legislature enacted the first special statutory provision for compensable hernias in Chapter 363 of the Acts of 1931. It provided that:

> In all claims for compensation for hernia[s], compensation may be allowed only upon **definite proof** to the satisfaction of the Commission [of six separate conditions]. First[,] [t]hat there was an accidental injury causing [the] hernia, arising out of and in the course of the employee's employment. Second[,] [t]hat the hernia had appeared suddenly. Third[,] …it was accompanied by pain. Fourth[,] …the hernia immediately followed such injury. Fifth[,] …the hernia [must] not [have] exist[ed] prior to the injury for which compensation is claimed [and] [s]ixth, …[the] injury [must have been] reported to the employer within 48 hours next following its occurrence.

Md. Laws Ch. 363 (1931) (emphasis added).

Shortly thereafter, the Court of Appeals discussed, in *Lloyd v. Webster*, the statute and the reason for the requirements. The Court did not refer to any of the requirements as necessitating a newer or stricter standard of proof.

> These special requirements in the Maryland statute are similar to those previously adopted in a number of other states to gain greater assurances that hernias compensated for have in fact resulted from accidental strains. The general provisions of the compensation statutes, it appears, had seemed to work unsatisfactorily because previous accidental strains were sometimes inferred merely from the development of the hernias when no strains had been reported or known. Occurrence of a strain would … be a fact peculiarly within the knowledge of the workman, and there could be no means of testing the truth of attribution of the hernia to strains if no strains had been reported at the time. Further, medical testimony had cast considerable doubt on the possibility of traumatic cause of hernias.

> This [C]ourt construes the Maryland statute as intended to restrict compensation for hernia[s] to accidents noticed and reported at the time of their occurrence.

165 Md. 574, 576 (1933).

In 1935, the Maryland legislature amended the statute and reduced the requirements for compensation to the following:

> First, that there was an accidental injury causing hernia, arising out of and in the

9

course of employment.  Second, that the hernia did not exist prior to the injury for which compensation is claimed, with a proviso if a pre-existing hernia became strangulated, requiring immediate operation, this requirement would not apply, and third, that the injury must be reported to the employer within 10 days next following its occurrence.

Md. Laws Ch. 487 (1935).  The changes lessened the burden placed upon the claimant and gave more time to make a report, but still included the requirement of definite proof. *Bethlehem Steel Co.*, 187 Md. at 289.  The statute reached its current form in 194 Md. Laws Ch. 336, and it sets forth the compensability requirements for a hernia which are separate and distinct from those of accidental injury and occupational disease claims. *Greer v. Montgomery Cnty.*, 246 Md. App. 245 (2020).  Hernias are compensable only pursuant to LE § 9-504.  (1 Maryland Workers' Compensation Handbook § 9.03 (2020) (page 9-36 through 9-37)).

Recently, this Court, in *Greer,* examined whether a hernia was compensable as an occupational disease and referenced Clifford Sobin's treatise on Maryland Workers' Compensation Law, which describes hernia injuries as "a subset of workers' compensation claims that are subjected to different treatment under the law."  Maryland Workers' Compensation, § 5.3, at 141.

> The clear intent of the hernia provisions of the Act is to provide additional protections to employers from employees who claim their hernias were as a result of a job-related activity.  Such concerns are probably grounded on the following three factors that perhaps in combination apply to hernias to a far greater degree than other injuries:
>
> (1) It is often difficult to pick a particular event that caused the hernia since the pain or symptoms may not be experienced immediately;
> (2) hernias can easily be caused by non-job-related functions; and

(3) hernias usually are relatively easily repairable by surgery which has less risk than other procedures. [*footnote omitted*].

Therefore, rather stringent requirements have been placed on a claimant by the Act. These requirements provide employers an opportunity to properly investigate claims expeditiously and provide incentives to employees to act quickly to mitigate the effect of the injury.

Maryland Workers' Compensation, §5.3, at 142-43.

The treatise pointed to the reason for the stricter requirement but did not characterize "definite proof" as a higher standard of proof. Likewise, our review of other states that have similar hernia workers' compensation statutes did not confirm that "definite proof" is a higher standard of proof. The statutes of twelve other states[5] include the terms "definite proof" or "definitely proven" as it relates to hernia claims. They, like Maryland, do not define the phrases, neither are the terms recognized as a standard of proof by case law or other statutory treatment.

For example, in an appeal to the Fifth Circuit Court of Appeals from the District Court of the United States for the Eastern District of Texas, the court addressed whether plaintiff's evidence in a suit under the Texas Workmen's Compensation Act for a hernia was sufficient to make a case for the jury. The Court referred to the quality of the evidence but not to a standard of proof. *Hicks v. Georgia Casualty Co.*, 63 F.2d 157 (1933). The court stated:

[T]he contention [here] that the evidence of plaintiff working in a garage and running up a ramp to get some cars down for which customers were in a hurry [and]

---

[5] The twelve states that use "definite proof" or "definitely proven," not including Maryland are: North Carolina, South Carolina, West Virginia, Virginia, Florida, Georgia, Kentucky, Louisiana, Texas, Wisconsin, Tennessee, and Alabama.

…suddenly felt a pain in his side and the hernia appeared, is of too slight probative force to satisfy the measure of [definite] proof.

*Id*. at 158.

Thus, based on our review, we hold the language of the statute is clear, the term "definite proof" refers to the quality of evidence and does not constitute a standard of proof, nor does its inclusion in the statute require the heightened clear and convincing standard. The legislative history and caselaw confirm that the term was included in the statute in response to the need to ensure that compensation for hernias is based on testimony and evidence, most often medical evidence, that substantiates a worker's claim.

**II.    The Commission did not err in finding that appellee met the evidentiary standard of "definite proof" when he provided expert medical opinions that constituted a preponderance of the evidence.**

Appellants contend that appellee failed to satisfy the requirements of §9-504, which require that definite proof be offered that the hernia did not exist prior to the work accident. Appellants argue that Dr. Macht's opinion "to a reasonable degree of medical certainty" and Dr. Kravitz's opinion that the hernia was "more likely than not" caused by the September 2019 injury were not sufficient.  We do not agree.

Appellee was examined by Dr. Macht on January 15, 2020 and his report detailed, to a reasonable degree of medical certainty, that although appellee had "a history of prior umbilical hernia surgery[,] he had no recurrence of his umbilical hernia at the time of his evaluation in this office, in September 2016."  Additionally, he stated:

> Based on his medical records, he developed a new onset of an umbilical hernia at the time of the [September 2019] accident…. He had urgent surgery a few weeks later due to that umbilical hernia.

12

At this time taking all these factors into consideration, along with AMA Guidelines, there is a 10 percent permanent partial impairment of his abdominal wall solely due to the September …2019 accident and solely due to the umbilical region.

The report was admitted into evidence without objection.

Appellee's treating physician, Dr. Kravitz, also submitted a report that stated: "I performed hernia surgery on [appellee] on November 14, 2019. This hernia was the result of an accident at work in September 2019. Although he had prior umbilical hernia surgery, this hernia was a separate event and more likely than not was caused by the injury of September 2019." This report was also submitted without objection.

Appellants argue that both opinions failed to meet the "definite proof" standard of clear and convincing evidence. As we have held that "definite proof" is not a standard of evidence, we decline to address this argument further. Appellants also argue that Dr. Macht's opinion was incomplete as his opinion only related to the 2016 hernia and not one 20 years prior. Appellant contends that appellee failed to prove that his hernia was not the result of either of his pre-existing hernias.

We hold that the Commission considered all of the facts and made its decision regarding credibility based on the evidence presented. It neither misconstrued the law or facts and thus is presumed to be correct. While, clearly, appellants did not have the burden of proof, because they presented no medical testimony that refuted that provided by appellee, the Commission was left one view, which it found credible and persuasive.

**III.** **The Commission did not err in finding that the hernia operation took place "immediately," as required by § 9-504.**

Section 9-504 of the Labor and Employment Article states: "as a result of the accidental personal injury or strain, a preexisting hernia has [to] become so aggravated, incarcerated, or strangulated that an immediate operation is needed."

Appellants argue that appellee's hernia repair surgery was not "immediate" because it occurred 59 days after the accident. Appellants cite *Washington Metropolitan Area Transit Authority v. Hewitt*, 153 Md. App. 42 (2003), stating that "immediately has been construed to mean without interval of time, without delay… or lapse of time."

Here, it is uncontested that appellee immediately sought medical attention after injuring himself. Following his diagnosis, within 7 days, he sought out a further diagnosis and scheduled his surgery for September 30, 2019. Because appellants contested the claim and disputed the injury, appellee's surgery could not be performed. Appellee, nevertheless, continued his efforts to have the surgery performed and Dr. Kravitz did, in fact, perform the surgery on November 14, 2019.

In sustaining appellee's claim that the surgery was performed immediately, the Commission did not err. Under the circumstances in this case, where the surgery was performed 59 days later, because of difficulties in finding a surgeon, insurance coverage and conflicts in the surgeon's scheduled operation, we hold the medical records supported the contention that the surgery was needed "urgently." Thus, the requirement of immediacy was satisfied. As the circuit court judge stated, "there has to be a difference between the use of the word immediate and emergency…I don't believe that immediate is

14

a substitute for the word emergency." We agree. But for the action of appellants in contesting the injury, appellee would have had his surgery 13 days after the incident. The fact that it was 59 days later does not diminish its urgent or immediate nature.

**JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY AFFIRMED; COSTS TO BE PAID AND SPLIT 50-50 BETWEEN THE APPELLANTS.**